**BORLEM S.A.–EMPREEDIMENTOS INDUSTRIAIS and FNV–Veiculos E Equipamentos S.A., Plaintiffs,**

v.

**The UNITED STATES of America and U.S. International Trade Commission, Defendants,**

**and**

**The Budd Company, Defendant–Intervenor.**

**Court No. 87–06–00693.**

United States Court of International Trade.

June 29, 1989.

Willkie, Farr & Gallagher, (William H. Barringer, Arthur J. Lafave, III and Daniel L. Porter), Washington, D.C., for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel U.S. Intern. Trade Com'n (Frances Marshall), Washington, D.C., for defendants.

Barnes, Richardson & Colburn, (James H. Lundquist, Matthew T. McGrath and Peter A. Martin), Washington, D.C., for defendant-intervenor.

## OPINION AND ORDER

CARMAN, Judge:

Plaintiffs, Borlem S.A.–Empreedimentos Industriais (Borlem) and FNV–Veiculos E Equipamentos S.A. (FNV), move pursuant to Rule 56.1 of this Court for partial judgment on Count I of the Complaint requesting an immediate remand to the United States International Trade Commission (ITC) to reconsider its affirmative threat of injury determination in light of the International Trade Administration's (ITA) *Amended Final Determination of Sales at Less Than Fair Value and Amended Antidumping Duty Order; Tubeless Steel Disc Wheels From Brazil,* 53 Fed.Reg. 34,-566 (September 7, 1988) (Commerce's Second–Amended Final Determination). Plaintiffs request that this Court effectively set aside the remand determination of the ITC declining to reconsider its determination in *Tubeless Steel Disc Wheels From Brazil,* USITC Pub. No. 1971, Inv. No. 731–TA–335 (Final) (April 1987), 52 Fed.Reg. 17,487 (May 8, 1987). Defendants and defendant-intervenor oppose the motion.

The question presented to the Court is whether or not the ITC, upon a remand from this Court, has the power to reconsider its determination. This Court holds that the ITC has such power and that the exercise of such power is discretionary. Hence, the next question is whether or not the ITC should, in the exercise of its discretion, reconsider its determination that an industry in the United States is threatened with material injury by reason of less than fair value (LTFV) imports from Brazil of tubeless steel disc wheels (TSDWs) in light of Commerce's Second–Amended Final Determination. If the ITC in its discretion determines that it should reconsider its determination, then it is directed to complete such reconsideration. If the ITC determines that it should not reconsider its determination, it is directed to set forth the reasons why it should not reconsider its determination.

## FACTS

The facts as set out in *Borlem, S.A. Empreedimentos Industriais v. United States,* 13 CIT ——, 710 F.Supp. 797 (1989) (*Borlem I*), are substantially repeated for convenience.

On May 23, 1986, the Budd Company filed an antidumping petition with Commerce and the Commission on behalf of the United States industry producing TSDWs. The petition alleged that Brazilian manufacturers were selling TSDWs in the United States at LTFV within the meaning of section 731 *et seq.,* of the Tariff Act of 1930 as amended, (19 U.S.C. § 1673 *et seq.*) and that an industry in the United States was materially injured or threatened with material injury by reason of imports of this merchandise. At all relevant times, there were only two Brazilian exporters of tubeless steel disc wheels: Borlem and FNV.

On March 13, 1987, Commerce issued an affirmative final antidumping duty determination for TSDWs from Brazil. *Final Determination of Sales at Less Than Fair Value: Tubeless Steel Disc Wheels From Brazil,* 52 Fed.Reg. 8,947 (March 20, 1987). Commerce found that the LTFV dumping margin for Borlem was 15.25% *ad valorem,* and for FNV, 19.93% *ad valorem.* The Commission subsequently determined

that an industry in the United States was threatened with material injury by reason of imports of the subject merchandise from Brazil. *Tubeless Steel Disc Wheels From Brazil,* USITC Pub. No. 1971 (Final).

Following issuance of the final injury determination, Commerce issued an antidumping duty order together with an amendment to its final LTFV determination correcting clerical errors. *Amendment to Final Determination of Sales at Less Than Fair Value; Tubeless Steel Disc Wheels From Brazil, and Antidumping Duty Order,* 52 Fed.Reg. 19,903 (May 28, 1987).

On May 28, 1987, Borlem and FNV commenced two actions, one challenging the final LTFV determination by Commerce (Court No. 87–06–00692) and the other challenging the final injury determination by the Commission (the instant case). On June 15, 1988, this Court at the request of the ITA remanded the final LTFV determination and antidumping duty order to Commerce with instructions to recalculate the dumping margin and to correct all clerical, methodological and transcription errors. *Borlem, S.A. Empreedimentos Industriais v. United States,* 12 CIT ——, Slip Op. 88–77, 1988 WL 63336 (June 15, 1988).

The remand resulted in the publication on September 7, 1988, of a second-amended final LTFV determination and amended antidumping duty order. 53 Fed.Reg. 34,566. The second-amended final LTFV determination found Borlem to have a weighted-average dumping margin of 10.84% and FNV, a margin of 0.04%. Commerce deemed FNV's margin to be *de minimis* and excluded this company from its amended affirmative determination. Based on the amended determination, Commerce directed the United States Customs Service to terminate suspension of liquidation for all entries of TSDWs from Brazil by FNV. 53 Fed.Reg. at 34,569.

On September 22, 1988, the Budd Company filed a summons and complaint with the Court contesting the second amended final LTFV determination and antidumping order. *See The Budd Company v. United States,* 700 F.Supp. 35 (C.I.T.1988). On October 4, 1988, Borlem filed a summons and complaint contesting different aspects of the same determination. *See Borlem S.A. Empreedimentos Industriais v. United States,* Court No. 88–10–00760. These actions related to the commerce determinations.

On March 22, 1989, in the instant case, this Court, at the request of the ITC after oral argument, invoked the doctrine of primary jurisdiction and pursuant to its power to remand under the Customs Courts Act of 1980, 28 U.S.C. § 2643(c)(1) (1982), returned the matter to the ITC. *See Borlem I.* The Court instructed the ITC to consider a hybrid legal and policy question in accordance with the doctrine of primary jurisdiction in light of the expertise of the ITC in the administration of the antidumping laws. The ITC was directed to decide whether it should reconsider its injury determination and further, should it determine to reconsider, to proceed with such reconsideration. This Court said:

> By sending the matter back to the ITC for its views, the Court [was] neither extending nor abdicating its jurisdiction. This Court is merely waiting until the agency has had an opportunity to formulate its position. Upon completion of the remand proceedings, this Court will review all the ITC's actions to determine if they are based upon substantial evidence and are in accordance with law.

*Borlem I,* 13 CIT at ——, 710 F.Supp. at 802.

On April 11, 1989 the ITC determined that there was no explicit authority for the ITC to undertake reconsideration of its decision except for the process under section 751 of the Act, 19 U.S.C. § 1675. *Tubeless Steel Disc Wheels From Brazil,* USITC Pub. No. 2179 (Views on Remand in Inv. No. 731–TA–355) at 5–6. The ITC reported to this Court its determination not to reconsider its final affirmative threat of a material injury determination in *Tubeless Steel Disc Wheels From Brazil,* USITC Pub. No. 1971 (Final).

### THE ITC DETERMINATION

The ITC in its report to this Court of its determination indicated that it should not

reconsider its final affirmative threat of material injury determination in *Tubeless Steel Disc Wheels From Brazil*, USITC Pub. No. 1971 (Final), in light of the Department of Commerce's Second–Amended Final Determination, 53 Fed.Reg. 34,566. The ITC indicated it did not have the power to reconsider.

The majority said:

We conclude that Congress did not intend for such matters to be the basis for a reconsideration by the Commission. We base this conclusion on the relevant statutes, taking into consideration the nature and structure of the statutory process for the conduct of antidumping investigations, and the interests of finality and equity, as well as the consequences for the efficient administration of antidumping investigations if matters such as these are remanded to the Commission.

USITC Pub. No. 2179 at 3.

The ITC majority found no explicit statutory authority for the ITC to reconsider its decisions except for an administrative review under section 751 of the Tariff Act of 1930.[1] The ITC citing generally 19 U.S.C. §§ 1671a(c), 1673a(c), 1671b(a), 1671b(b), 1673b(a), 1673b(b), 1671d(a), 1671d(b), 1673d(a), 1673d(b) indicated that Congress created a complex system for the administration of the antidumping and countervailing duty laws that requires *speed* in the making of determinations. *Id.* at 6–7.

The ITC indicated that the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1333, 102 Stat. 1107, 1209, (1988) (the 1988 Act) authorizes Commerce to reconsider and revise its findings

1. Section 751 states in pertinent part:

§ 1675. Administrative review of determinations

(a) Periodic review of amount of duty

(1) In general

At least once during each 12–month period beginning on the anniversary of the date of publication of a countervailing duty order under this subtitle or under section 1303 of this title, an antidumping duty order under this subtitle or a finding under the Antidumping Act, 1921, or a notice of the suspension of an investigation, the administering authority, if a request for such a review has been received and after publication of notice of such review in the Federal Register, shall—

(A) review and determine the amount of any net subsidy,

(B) review, and determine (in accordance with paragraph (2)), the amount of any antidumping duty, and

(C) review the current status of, and compliance with, any agreement by reason of which an investigation was suspended, and review the amount of any net subsidy or margin of sales at less than fair value involved in the agreement,

and shall publish the results of such review, together with notice of any duty to be assessed, estimated duty to be deposited, or investigation to be resumed in the Federal Register.

. . . .

(b) Review upon information or request

(1) In general

Whenever the administering authority or the Commission receives information concerning, or a request for the review of, an agreement accepted under section 1671c of this title (other than a quantitative restriction agreement described in subsection (a)(2) or (c)(3)) or 1673c of this title (other than a quantitative restriction agreement described in subsection (a)(2)) or an affirmative determination made under section 1671c(h)(2), 1671d(a), 1671d(b), 1673c(h)(2), 1673d(a), 1673d(b), 1676a(a)(1), or 1676a(a)(2) of this title, which shows changed circumstances sufficient to warrant a review of such determination, it shall conduct such a review after publishing notice of the review in the Federal Register. In reviewing its determination under section 1671c(h)(2) or 1673c(h)(2) of this title, the Commission shall consider whether, in the light of changed circumstances, an agreement accepted under section 1671c(c) or 1673c(c) of this title continues to eliminate completely the injurious effects of imports of the merchandise. During an investigation by the Commission, the party seeking revocation of an antidumping or countervailing duty order shall have the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant revocation of the antidumping or countervailing duty order.

(2) Limitation on period for review

In the absence of good cause shown—

(A) the Commission may not review a determination under section 1671d(b) or 1673d(b) of this title, and

(B) the administering authority may not review a determination under section 1671d(a) or 1673d(a) of this title, or the suspension of an investigation suspended under section 1671c or 1673c of this title,

less than 24 months after the date of publication of notice of that determination or suspension.

. . . .

19 U.S.C. § 1675 (1982 & Supp. V 1987).

to correct certain ministerial errors. The majority pointed out:

> Congress's 1988 authorization of Commerce to undertake reconsideration to correct ministerial errors in its determination is particularly significant. That Congress granted the power to reconsider its determination outside the ordinary time frame for its determinations, but did not provide equivalent authority to the Commission, should be construed as prohibiting the assumption of such a power by the Commission.

We note that the disparate treatment of Commission and Commerce determinations with regard to reconsideration in the 1988 Act is not the first instance where Congress provided different treatment for the two agencies' determinations. For example, ... there is an annual review of the Commerce determination, which is required if requested. Commission review under section 751 is discretionary and is warranted only under changed circumstances and, if sought within the first 24 months after the determination, only for good cause. Further, while the Commerce determination is based on the same statutory standard as the original determination, the standard for the Commission's determination in review cases is distinct from the standard used in the original investigation.[21]

---

[21] *Compare* 19 USC 1675(a) *with* 19 USC 1675(b). While the initial determination of the Commission is whether the unfair imports caused or threatened material injury, in section 751 investigation [sic] the specific question is whether revocation of the order would lead to material injury.

USITC Pub. No. 2179 at 7–9 (footnotes omitted).

The ITC observed that one of the primary concerns of Congress was to speed up the process by which investigations are conducted and duties imposed. *Id.* at 10. Congress, according to the ITC, did not intend for reconsideration in the circumstances of the present case.

The ITC underlined its argument that Congress wanted dumping and countervailing duty proceedings to be handled speedily by pointing out that Congress showed this concern by drastically reducing the time allowed for investigation even though it was clear investigations and records would necessarily be less than complete. The ITC majority said:

> By granting the Commission authority to make determinations on "the best information available"[25] and by limiting review "to the record,"[26] Congress recognized that the short time limits involve a trade off in which completing investigations promptly and efficiently are of highest priority.

Thus, looking at the structure of antidumping and countervailing duty proceedings, we conclude that there is no express grant of authority for the Commission to reconsider its determinations in the present situation. Such reconsideration, we conclude, would be actually inconsistent with the statute and the structure of antidumping and countervailing duty investigations.

---

[25] 19 U.S.C. § 1677e(b).

[26] Congress provided that review should be on the basis of whether the final determination was supported by substantial evidence *on the record,* that is, on the basis of the facts that were before the agency at the time it made its determination. 19 U.S.C. § 1516a(b)(1)(B). Congress thus precluded the extension of the investigation by discovery or factfinding as to new information during appellate review.

*Id.* at 10–11 (emphasis in original).

## DISCUSSION

■ The standard of review for final injury determinations in antidumping cases is whether, on the basis of the administrative record before the Court, the action of the agency is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). This Court must give substantial weight to the agency's interpretation of the statute subject to its administration. *American Lamb Co. v. United States,* 4 Fed.Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986). Furthermore "[t]he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong...." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct.

1794, 1802, 23 L.Ed.2d 371 (1969). Nevertheless, this Court has significant powers in law and equity to remand to the administrative agency where proper circumstances require. Explicit authority to remand is given to this Court in the Customs Courts Act of 1980. 28 U.S.C. § 2643(c)(1).[2]

This Court stated in *Borlem I,* "Congress was clear in its purpose: 'In granting this remand power to the court, the Committee intends that the remand power be co-extensive with that of a federal district court.' " This Court observed " '[j]udicial authority supports granting a request for remand if it fosters and promotes fundamental fairness.' " 13 CIT at ——, 710 F.Supp. at 799 (*citing Alhambra Foundry Co., Ltd. v. United States,* 12 CIT ——, 685 F.Supp. 1252, 1262 (1988); *ILWU Local 142 v. Donovan,* 12 CIT ——, 678 F.Supp. 307 (1988); *PPG Industries, Inc. v. United States,* 13 CIT ——, 708 F.Supp. 1327 (1989).

Although limited in its review to the administrative record, *see* 19 U.S.C. § 1516a(b)(1)(B), this Court must take judicial notice of decisions of federal executive departments when requested by a party. *See,* Fed.R.Evid. 201; *Caha v. United States,* 152 U.S. 211, 221–22, 14 S.Ct. 513, 516–17, 38 L.Ed. 415 (1894); 10 Moore's Federal Practice § 201.02(1) (2nd Ed.1988 & Supp.1989). Since plaintiff requested this Court to take judicial notice of the Second–Amended Determination by Commerce, this Court must and does take judicial notice of that determination. The Second–Amended Determination terminated suspension of liquidation for all entries of TSDWs from Brazil by FNV. In the Second–Amended Determination Commerce indicated the reason for the suspension was its finding of *de minimis* dumping margins as to FNV. 53 Fed.Reg. at 34,569.

Hence it seems clear that had the ITC known at the time it made its affirmative threat of injury determination that FNV, the major manufacturer of TSDWs import-

ed from Brazil, was not dumping or had *de minimis* dumping margins, there is a very strong possibility the ITC would have found no injury. In other words, it would appear the ITC made its finding of injury based upon material and significant inaccurate facts.

The ITC majority in deciding not to reconsider its affirmative determination indicated it was apprehensive about several potential administrative problems. It expressed concern about the cost to private parties as well as added burdens upon government resources if a case were subject to reconsideration. USITC Pub. No. 2179 at 15. The ITC majority said:

> We do not want the prospect of court-ordered reconsideration to chill the filing of petitions, especially by small businesses with limited resources.
>
> ... Although we cannot predict the frequency with which Commerce decisions will result in court-mandated revisions, we would expect such revisions to result in some requests for court-ordered Commission reconsideration.
>
> The added burden will be exacerbated in cases where the Commission is required to obtain *new* evidence as part of the reconsideration.

*Id.* at 15–16 (emphasis in original, footnotes omitted).

The ITC majority expressed reluctance to engage in critical analysis of its sister agency's decisions that parties might demand should reconsideration be a possibility. The ITC pointed out that second guessing a determination by the ITA would tend to foster poor relations between the two agencies which must cooperate for the bifurcated system to operate effectively. *Id.* at 17–18.

Concluding, the ITC majority said:

> We have examined Borlem's arguments carefully and appreciate its perception that the system operates to Bor-

**2.** 28 U.S.C. § 2643(c)(1) provides:

Except as provided in paragraphs (2), (3), and (4) of this subsection, the Court of International Trade may, in addition to the orders specified in subsections (a) and (b) of this

section, order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition.

lem's disadvantage if the Commission does not reconsider. Nevertheless, … we believe that the procedure for rendering antidumping determinations can operate effectively, and as Congress designed it, only if the Commission refrains from creating an exception to the finality of its determinations in order to remedy the exigencies of Borlem's case. Congress opted for expedition and finality in the statutory scheme, and it is our observation that the ability of firms in general to plan and effectively conduct their business, particularly in the area of international trade, depends in no small measure on the stability of administrative processes. Any adjustment in the statutory scheme to provide recourse for those in Borlem's situation is in our judgment properly for Congress and not for this agency or the courts.

*Id.* at 18–19.[3]

Borlem, while conceding there is no explicit administrative procedure in the Act for the ITC to review its final injury determination other than a section 751 review, contends that federal courts have recognized the inherent power of administrative agencies to reconsider where the agency's decision has been based upon erroneous facts or to correct errors of procedure or substance, citing *Alberta Gas Chemicals, Ltd. v. Celanese Corp.*, 650 F.2d 9 (2d Cir.1981).

The ITC apparently has recognized a fundamental power to reconsider its determinations. 19 CFR § 207.46 (1988) provides: "Nothing in § 207.45 [the regulation implementing section 751 of the Act] shall limit

the *inherent* authority of the Commission to issue an appropriate modification, clarification, or correction of a determination *within a reasonable* time of its issuance." (Emphasis added).

In *Greene County Planning Bd. v. Fed. Power Commission,* 559 F.2d 1227, 1233 (2d Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978), Circuit Judge Lombard said:

> While an agency does have an obligation to make corrections when it has been relying on erroneous factual assumptions, *especially where broad public interests are at stake,* see *Hudson River Fishermen's Ass'n v. FPC,* 498 F.2d 827, 833 (2d Cir.1974), *an agency's refusal to reopen the record cannot be deemed arbitrary and capricious unless the new evidence offered, if true, would clearly mandate a change in result.*

(Emphasis added).

This rationale has ample support. *See, e.g., Alberta Gas Chemicals, Ltd.,* 650 F.2d 9; *Mobil Oil v. ICC,* 685 F.2d 624 (D.C.Cir. 1982); *Duval Corp. v. Donovan,* 650 F.2d 1051 (9th Cir.1981); *Nance v. Environmental Protection Agency,* 645 F.2d 701 (9th Cir.), *cert. denied sub. nom. Crow Tribe of Indians, Montana v. Environmental Protection Agency,* 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). In any event, this Court need not rely upon the inherent powers of the ITC to reconsider its decision since, as provided further in this opinion, corrections can take place under the authority of a remand from this Court.

---

**3.** The ITC majority at footnote 18 of its determination said:

> In Pipes and Tubes of Iron and Steel from Japan, Inv. No. 731–TA–15 (Preliminary), the Commission asserted the authority to reconsider a decision because of a clear, although unintended, mistake in its record. 45 *Fed. Reg.* 42898 (June 25, 1980). The Court found that assertion of such power by the Commission was contrary to the "legislative policy manifest in the governing statute." *Babcock and Wilcox v. United States,* 521 F.Supp. 479, 486 (CIT 1981). *Babcock and Wilcox* was subsequently vacated as moot and thus is not precedential. *Nevertheless, we find the logic compelling.*

USITC Pub. No. 2179 at 8 (emphasis added).

> While this Court is in ready agreement that an administrative agency can have no more powers than those which have been delegated to it, necessarily with those delegated powers certain implied powers are derived. Correction of mistakes, depending upon when they are discovered and when they are corrected, would seem readily to fall within such implied powers.
>
> In any event, since this Court is relying upon the express powers Congress granted to it by its remand authority as set forth elsewhere in this opinion, there is no need to rely upon the use of such implied powers in this case.

Borlem cites *Badger–Powhatan v. United States,* 10 CIT 241, 633 F.Supp. 1364 (1986); *The Timken Co. v. United States,* 7 CIT 319, 1984 WL 3725 (1984); *Gilmore Steel Corp. v. United States,* 7 CIT 219, 585 F.Supp. 670 (1984); and *Smith Corona Corp. v. United States,* 11 CIT ——, 678 F.Supp. 285 (1987) as examples of this Court's use of its remand authority to order the correction of legal errors in the context of judicial review.

Defendants point out, nevertheless, that agency expertise in interpreting the laws the agency administers ought to be sustained as long as the statutory interpretation is reasonable, citing *PPG Industries, Inc. v. United States,* 13 CIT ——, 712 F.Supp. 195 (1989), *appeal docketed,* No. 89–1520 (Fed.Cir. June 1, 1989); *United States v. Zenith Radio Corp.,* 64 CCPA 130, 562 F.2d 1209 (1977), *aff'd,* 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978) and *American Lamb Co.,* 4 Fed.Cir. (T) 47, 785 F.2d 994. Memorandum of United States International Trade Commission in Response to Plaintiffs' Motion for Partial Judgment on Count I of the Complaint at 12.

The defendants argue further citing *Chevron USA v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), that where Congressional intent is clearly discernible, agencies, as well as courts, must give that intent effect. Defendants quote *Chevron* which stated: "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782 (footnote omitted).

■ This Court, mindful of its obligation to give substantial weight to the agency's interpretation of the statutes it administers, cannot defer to an interpretation where there are compelling indications that the interpretation is incorrect.

■ This Court holds that the interpretation by the ITC that it does not have the power on a remand from this Court to reconsider its final determination is unreasonable and not a permissible construction

of the statute. While the ITC majority properly pointed out that Congress wanted dumping and countervailing duty cases to be handled speedily and was willing to accept as a trade off for speed less than complete records, there has been no showing that Congress had no concern for accuracy. The mere fact that Congress was willing to grant the ITC authority to make determinations on the "best information" available, should not be interpreted as authorizing proceedings that are so flawed with inaccurate facts that different results would obtain if accurate facts were used. Congress although providing no explicit administrative procedure in the Act for the ITC to review its final determinations other than section 751 reviews did, nevertheless, make specific provisions for judicial review. *See* 19 U.S.C. § 1516a.

Notwithstanding a lack of explicit statutory authority in the Act for ITC reconsideration of final agency determinations, other than section 751 reviews, there is no doubt that remands from this Court provide a vehicle for reconsideration by the ITC and the ITA. *See* 28 U.S.C. § 2643(c)(1).

The broad and sweeping remand authority given to this Court by the Customs Courts Act of 1980, 28 U.S.C. § 2643(c)(1), demonstrates the concern of Congress for accuracy in these very important cases. It seems clear in the instant case that the fact that FNV, the major manufacturer of TSDWs imported from Brazil, was not dumping or was dumping with *de minimis* margins is of such substantial significance that the ITC might well have changed its determination and determined there was no material injury or threat of material injury. *See* Confidential Administrative Record Document No. 14 of List 2 (Final Staff Report to the Commission), at A–51; USITC Pub. No. 2179 at 22 (Dissent of Commissioner Cass).

Furthermore, although one might argue that corrections can wait until the 751 review since the dumping order merely requires duty deposits and does not assess the duties to be paid until the time of the 751 review, *see Cabot Corp. v. United States,* 9 CIT 489, 620 F.Supp. 722 (1985),

*appeal dismissed,* 4 Fed.Cir. (T) 80, 788 F.2d 1539 (1986), *vacated in part,* (CIT order of Nov. 20, 1986); *Alhambra Foundry Co., Ltd. v. United States,* 10 CIT 330, 635 F.Supp. 1475 (1986), such corrections may not be so easily obtained. The majority of the ITC has pointed out that the standard it must use at the 751 review is different from that which is employed at its original determination. USITC Pub. No. 2179 at 7–8. The inaccurate information, *i.e.* the non-dumping status of FNV, may not be considered relevant by the administrative agencies at the 751 review.

The majority expressed many concerns of administrative problems that might occur at the prospect of court ordered reconsideration. This Court is not unmindful of these administrative problems or of its obligation to give substantial weight to the agency interpretation of the statutes subject to its administration. *See American Lamb Co.,* 4 Fed.Cir. (T) at 54, 785 F.2d at 1001.

The Court nevertheless observes that the facts of this case are unusual.

The dissenting views of Vice Chairman Ronald A. Cass are helpful.

> Reconsideration of Commission decisions should not be undertaken lightly. The compressed statutory timeframe established for Title VII antidumping and countervailing duty investigations clearly suggests that Congress wished to minimize the uncertainty and disruption to international trade that necessarily attends such investigations. Consistent with that objective, it is important that there be some measure of finality to our investigations. When we leave open the possibility that our determinations will be revisited, the principle of finality is to some extent compromised.
>
> Nevertheless, as Congress has recognized in providing, without any time limits, for judicial review of Title VII administrative determinations, there are cir-

cumstances when such compromise is necessary. The real question before us is whether this case presents such circumstances. I believe that it does, but I emphasize that the circumstances justifying reexamination here are quite exceptional.

The error that has apparently been made, and rectified, by the Department of Commerce is by no means a trivial one. Because we have not had occasion actually to reconsider the Commission's earlier determination, it is not possible to say whether our disposition of this investigation would have been different if this error had not been made. However, the record now before us suggests at least *a very strong possibility that the error was outcome determinative.*

USITC Pub. No. 2179 at 21–22 (emphasis added, footnote omitted).

This Court observes that while the majority of the ITC expressed numerous policy concerns why it should not reconsider its injury determination, it seemed to decline reconsideration primarily because it thought it lacked the power on a remand from this Court to do so.

## CONCLUSION

This Court holds the ITC has the authority and the power to reconsider a final determination when directed by this Court to do so pursuant to this Court's remand authority. This Court directs further that the ITC shall determine if, in the exercise of its discretion, it should reconsider. If the ITC determines that it should reconsider its final affirmative determination, then it is directed to complete such reconsideration. If the ITC determines that it should not reconsider its determination, it is directed to set forth the reasons why it should not reconsider its determination.[4]

## ORDER

Upon consideration of plaintiffs' motion for partial judgment on Count I of the

---

**4.** In the dissenting views of Vice Chairman Cass, he stated:

> I dissent from the Commission's determination.... Without having seen the opinion that has been submitted to the Court by my colleagues,[1] I cannot comment meaningfully on the reasons why my resolution of this

question differs from that of the Commission majority. With that limitation in mind, I will ... explain ... why ... we should reconsider....

---

[1] In this proceeding, as in other Title VII investigations, certain Commissioners among

Complaint, upon defendants' and defendant-intervenor's opposition thereto and upon all pleadings and papers submitted herein; it is hereby

ORDERED that this case is remanded to the International Trade Commission to determine whether or not in its discretion it should reconsider its final determination in *Tubeless Steel Disc Wheels From Brazil,* USITC Pub. No. 1971, Inv. No. 731–TA–335 (Final) (April 1987), 52 Fed.Reg. 17,487 (May 8, 1987); it is further

ORDERED that if the International Trade Commission determines to reconsider its final determination it is directed to complete such reconsideration within 60 days of the date of this Order; if the Commission determines that it should not reconsider its determination, it is directed to set forth the reasons why it should not reconsider its determination within 21 days of the date of this Order.

the Commission majority have declined to share their written views with dissenting Commissioners.
USITC Pub. No. 2179 at 21.

This Court, especially in light of its obligation to give substantial weight to the agency's interpretation of the statutes subject to its administration, expresses great frustration with this practice. While noting it makes it more difficult to perform its function of judicial review, this Court will nevertheless continue to perform its duty. This Court expresses the hope that this practice will come to an end.