**BORLEM S.A.–EMPREEDIMENTOS INDUSTRIAIS and FNV–Veiculos E Equipamentos S.A., Plaintiffs,**

v.

**The UNITED STATES of America and U.S. International Trade Commission, Defendants,**

and

**The Budd Company, Defendant–Intervenor.**

**Court No. 87–06–00693.**

United States Court of International Trade.

March 22, 1989.

Willkie, Farr & Gallagher, William H. Barringer, Arthur J. Lafave, III, argued the motion, and Daniel L. Porter, Washington, D.C., for plaintiff.

Lyn M. Schlitt, General Counsel, James A. Toupin, Asst. General Counsel, argued the motion, U.S. Intern. Trade Com'n, Timothy M. Reif, Washington, D.C., for defendants.

Barnes, Richardson & Colburn, James H. Lundquist, New York City, Matthew T. McGrath, both argued the motion, and Peter A. Martin, for defendant-intervenor.

## OPINION

CARMAN, Judge:

Plaintiffs Borlem S.A.–Empreedimentos Industriais and FNV–Veiculos E Equipamentos S.A. (Borlem and FNV) move pursuant to Rule 1 of this Court for a remand to the defendant, the International Trade Commission (ITC or Commission), to permit the Commission to decide whether its affirmative threat of material injury determination in *Tubeless Steel Disc Wheels From Brazil*, 52 Fed.Reg. 17,487 (May 8, 1987) should be considered in light of the Department of Commerce's (Commerce) determination in *Amended Final Determination of Sales at Less Than Fair Value and Amended Antidumping Duty Order; Tubeless Steel Disc Wheels From Brazil*, 53 Fed.Reg. 34,566 (Sept. 8, 1988), and to allow the ITC to actually reconsider its determination should it deem such action appropriate. The defendant-intervenor the Budd Company (Budd) opposes the motion. The defendant ITC supports it.

The issue presented in this case is whether under the doctrine of primary jurisdiction this Court should remand a hybrid legal and policy question of first impression to the ITC to allow it, in the first instance, to address the matter in light of its own expertise in the administration of the antidumping law; and further should it decide to reconsider, to conduct a reconsideration of its injury determination. Under the circumstances of this case and on the basis of the arguments of the parties and all papers submitted herein, the Court finds it appropriate to grant the motion and remand the matter to the Commission.

## FACTS

On May 23, 1986, the Budd Company filed an antidumping petition with Commerce and the Commission on behalf of the United States industry producing tubeless steel disc wheels (TSDWs). The petition alleged that Brazilian manufacturers were selling TSDWs in the United States at less than fair value (LTFV) prices within the meaning of section 731 *et seq.*, of the Tariff Act of 1930 as amended, (19 U.S.C. § 1673 *et seq.*) and that an industry in the United States was materially injured or threatened with material injury by reason of imports of this merchandise. At all relevant times, there were only two Brazilian exporters of tubeless steel disc wheels: Borlem and FNV.

On March 13, 1987, Commerce issued an affirmative final antidumping duty determination for tubeless steel disc wheels from Brazil. *Final Determination of Sales at Less Than Fair Value: Tubeless Steel Disc Wheels From Brazil*, 52 Fed. Reg. 8,947 (March 20, 1987). Commerce found that the margin of sales at LTFV for Borlem was 15.25% *ad valorem*, and for FNV, 19.93% *ad valorem*. On April 27, 1987, the Commission determined that an industry in the United States was threatened with material injury by reason of imports of the subject merchandise from Brazil. *Tubeless Steel Disc Wheels From Brazil*, USITC Pub. No. 1971, Inv. No. 731–TA–335 (Final) (April 1987), 52 Fed. Reg. 17,487 (May 8, 1987).

Following issuance of the final injury determination, Commerce issued an antidumping duty order together with an amendment to its final LTFV determination correcting clerical errors. *Amendment to Final Determination of Sales at Less Than Fair Value; Tubeless Steel Disc Wheels From Brazil, and Antidumping Duty Order*, 52 Fed.Reg. 19,903 (May 28, 1987).

On May 28, 1987, Borlem and FNV commenced two actions, one challenging the

final LTFV determination by Commerce (Court No. 87–06–00692) and the other challenging the final injury determination by the Commission (the instant case). On June 15, 1988, this Court remanded the final LTFV determination and antidumping duty order to Commerce with instructions to recalculate the dumping margin and to correct all clerical, methodological and transcription errors. *Borlem, S.A. Empreedimentos Industriais v. United States*, 12 CIT ——, Slip Op. 88–77, 1988 WL 63336 (June 15, 1988).

The remand resulted in the publication on September 7, 1988, of a second-amended final LTFV determination and amended antidumping duty order. *Amended Final Determination of Sales at Less Than Fair Value and Amended Antidumping Duty Order; Tubeless Steel Disc Wheels From Brazil*, 53 Fed.Reg. 34,566 (September 7, 1988). The second-amended final LTFV determination found Borlem to have a weighted-average dumping margin of 10.84% and FNV, a margin of 0.04%. Commerce deemed FNV's margin to be *de minimis* and excluded this company from its amended affirmative determination. Based on the amended determination, Commerce directed the United States Customs Service to terminate suspension of liquidation for all entries of TSDWs from Brazil by FNV.

On September 22, 1988, the Budd Company filed a summons and complaint with the Court contesting the second amended final LTFV determination and antidumping order. *See The Budd Company v. United States*, 700 F.Supp. 35 (CIT 1988). On October 4, 1988, Borlem filed a summons and complaint contesting different aspects of the same determination. *See Borlem S.A. Empreedimentos Industriais v. United States*, Court No. 88–10–00760. These actions related to the Commerce determinations.

This motion to remand to the Commission, relating to the commission decision in *Tubeless Steel Disc Wheels From Brazil*, ensued. Plaintiff and defendant consent to the remand, defendant-intervenor opposes the remand. Oral argument was held and this Court's order was issued granting the remand on March 10, 1989. This opinion states the Court's rationale for issuing the remand order.

## DISCUSSION

The standard of review in antidumping cases is whether on the basis of the administrative record before the Court the agency action is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1982). The Court must give substantial weight to an agency's interpretation of a statute it administers. *American Lamb Co. v. United States*, 4 Fed. Cir. (T) 47, 54, 785 F.2d 994, 1001 (1986). More importantly, for the purposes of this motion, this Court has significant powers in law and equity to remand to the administrative agency when circumstances require. Congress specifically granted this Court the power to remand in the Customs Courts Act of 1980. 28 U.S.C. § 2643(c)(1) (1982).[1] Congress was clear in its purpose: "In granting this remand power to the court, the Committee intends that the remand power be co-extensive with that of a federal district court." H.R.Rep. No. 1235, 96th Cong., 2nd Sess. 60, *reprinted in* 1980 U.S.Code Cong. & Admin.News 3729, 3772. This Court has noted that "[j]udicial authority supports granting a request for remand if it fosters and promotes fundamental fairness." *Alhambra Foundry Co., Ltd. v. United States*, 12 CIT ——, ——, 685 F.Supp. 1252, 1262 (1988).[2]

In addition to the above considerations, this Court must be mindful of the doctrine of primary jurisdiction. "Primary jurisdic-

---

1. 28 U.S.C. § 2643(c)(1) provides:
   (c)(1) Except as provided in paragraphs (2), (3), and (4) of this subsection, the Court of International Trade may, ..., order any other form of relief that is appropriate in a civil action, including, but not limited to, declaratory judgments, orders of remand, injunc-

tions, and writs of mandamus and prohibition.

2. *See also, ILWU Local 142 v. Donovan*, 12 CIT ——, 678 F.Supp. 307 (1988); *PPG Industries, Inc. v. United States*, —— CIT ——, Slip Op. 89–28, 1989 WL 20944 (March 8, 1989).

tion is a doctrine of common law, wholly court-made, that is designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented." Davis, *Administrative Law Treatise* 81 (2nd Ed., Vol. 4, 1983). The central purpose of the doctrine is to permit courts to give effect to legislative intent underlying the established regulatory scheme by referring matters involving agency expertise back to the agency so that it may, in the first instance, pass upon the issue from its unique administrative perspective.

In *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the Supreme Court outlined the parameters of the doctrine. "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* at 64, 77 S.Ct. at 165. In evaluating those purposes, the Court stressed that its central concern was the promotion of uniformity in agency decisions and respect for the deference due the "expert and specialized knowledge of the agencies." *Id.* Elaborating, the Court reasoned:

[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary re-

sort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

352 U.S. at 64–65, 77 S.Ct. at 165, *quoting Far East Conference v. United States*, 342 U.S. 570, 574–75, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952). In short, the "doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. Court jurisdiction is not thereby ousted, but only postponed." *United States v. Philadelphia Nat. Bank*, 374 U.S. 321, 353, 83 S.Ct. 1715, 1736, 10 L.Ed.2d 915 (1963) (citations omitted).

This Court's focus in this case concerns the Commission's long-standing practice of excluding from an *original* final injury determination import volume, pricing or other data for any firm excluded by Commerce from the scope of Commerce's *original* final determination.[3] Plaintiffs seek to have the Commission consider whether it is appropriate or necessary for the Commission to reconsider its final threat of injury determination in light of Commerce's exclusion of one of the two importers, FNV, from its *second* amended final determination and order. Apparently, the issue is one of first impression to the Court and Commission. It raises questions of law and administrative policy and practice related to the Commission's role in the bifurcated scheme established by Congress for administration of the antidumping and countervailing duty laws.

Plaintiffs move for a remand to the ITC on the basis of the doctrine of primary jurisdiction, arguing that the ITC would have excluded FNV from their injury determination had they been informed of the *de minimis* dumping margin, and that the Commission should have an opportunity to

---

**3.** *See e.g., Certain Granite from Italy and Spain,* USITC Pub. No. 2110 at 23 n. 88, Inv. Nos. 731–TA–381 & 382 (Final) (Aug. 1988); *Frozen Concentrated Orange Juice from Brazil,* USITC Pub. No. 1970 at 24 n. 89, Inv. No. 731–TA–326 (Final) (Apr. 1987); *Top-of-the-Stove Stainless*

*Steel Cooking Ware from Korea and Taiwan,* USITC Pub. No. 1936 at 10 n. 25, Inv. Nos. 701–TA–267 & 268 (Final) (Jan. 1987); *Certain Red Raspberries from Canada,* USITC Pub. No. 1707 at 8 n. 30, Inv. No. 731–TA–196 (Final) (June 1985).

consider and resolve the issues first before the matter is reviewed and decided by this Court.[4] Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Remand of the Agency Determination (Plaintiffs' Memorandum), at 13–15; Plaintiffs' Reply Brief in Support of the Motion for Remand of the Agency Determination (Plaintiffs' Reply Brief), at 2.

The defendants initially did not oppose the motion to remand, on the basis of primary jurisdiction, provided that the scope of the review was tailored to allow the Commission to consider whether a reanalysis of its threat of injury determination was appropriate in light of the substantial change in volume of imports found by Commerce in its second amended determination to have been sold at LTFV.[5] The ITC subsequently submitted a brief in support of a remand on the basis of primary jurisdiction but in opposition to arguments going to the merits of reconsideration made by Budd and Borlem.[6] *Inter alia*, the ITC contends that the Commission, by virtue of its specialized expertise, is in the best position to evaluate, in the first instance, the effects of an agency decision to reconsider its injury analysis on Commission practice

and the interrelationship of Commerce and the Commission under the bifurcated statutory scheme.[7]

Budd, defendant-intervenor, essentially raises three arguments in opposition to the motion. First, the Court does not have the power to remand the case because the scope of review is limited by statute to judgment on the agency record, and that the Court must reach the merits of the case under Court Rules and statutes.[8] Second, the doctrine of primary jurisdiction does not apply. Defendant–Intervenor's Supplemental Brief at 10. Third, a remand in this case is an extraordinary remedy not warranted by the facts.[9] Defendant–Intervenor's Memorandum at 5–7; Defendant–Intervenor's Supplemental Brief at 12. The Court finds none of these arguments persuasive.

Defendant-intervenor Budd fundamentally misconstrues the nature of this motion. It is clear, as noted above, that this Court has substantial powers in the law and equity to remand matters to an agency where appropriate. Defendant-intervenors implicitly recognize as much.[10] Further, the is-

---

**4.** The bulk of plaintiffs' arguments go to the substance of the ITC's injury determination at issue (and the merits of any subsequent injury determination should the ITC decide to reconsider) which exceed the scope of the motion to remand; consequently the Court will not address them.

**5.** Defendants' Memorandum in Reply to Plaintiffs' Motion for Remand of Agency Determination (Defendants' Memorandum), at 4–5.

**6.** Defendants' Memorandum in Response to Defendant–Intervenors' Memorandum and Supplemental Brief in Opposition to Plaintiff Borlem's Motion for Remand of Agency Determination (Defendants' Response), at 14–17. "The Commission's nonopposition to the current motion entails that it has not yet deliberated on and decided whether reconsideration should occur." Defendants' Response at 14–15.

**7.** Such considerations include, for example, the effect of a decision to reconsider on: the timing and finality of agency decisions; the possibility of undue disruption of international trade; the efficient use of scarce administrative resources; and, the likelihood and frequency of similar issues arising in the future.

**8.** Defendant–Intervenor's Memorandum in Opposition to Plaintiff's Motion For Remand of the

Agency Determination (Defendant–Intervenor's Memorandum), at 8–11; and Defendant–Intervenor's Supplemental Brief in Opposition to Plaintiff's Motion For Remand of the Agency Determination (Defendant–Intervenor's Supplemental Brief), at 4–10.

**9.** Budd also argues that the proper mechanism for plaintiffs to obtain relief in this case is a review under section 751(b) of the Tariff Act of 1930, 19 U.S.C. § 1675(b) (1982 & Supp. V 1987), and that Borlem's motion should be treated as a request that the ITC be permitted to make a new determination due to "changed circumstances." In light of the Court's decision to remand this matter on the basis of the doctrine of primary jurisdiction, without reaching the merits or the propriety of reconsideration, the Court likewise does not find it appropriate or necessary to express an opinion on this issue.

**10.** Budd cites to and quotes the section of the Customs Courts Act of 1980 which granted this Court remand powers co-extensive with those of Federal district courts. Budd then argues that the equities do not warrant a remand under the circumstances of this case. Defendant–Intervenor's Supplemental Brief at 12.

sue is not whether this Court, in granting a remand, is impermissibly extending its jurisdiction by expanding the administrative record or its scope of review. The issue in this case is whether this Court has the discretionary power to defer to the administrative agency to allow it to pass upon, in the first instance, a question of administrative practice peculiarly within its specialized expertise. By sending the matter back to the ITC for its views, the Court is neither extending nor abdicating its jurisdiction. This Court is merely waiting until the agency has had an opportunity to formulate its position. Upon completion of the remand proceedings, this Court will review all the ITC's actions to determine if they are based upon substantial evidence and are in accordance with law.

As counsel for plaintiffs has aptly pointed out, in cases in which the doctrine of primary jurisdiction is properly invoked it is necessarily true that the court does not reach the merits of the claim prior to the remand. To do otherwise would defeat the purpose of the doctrine in the first place— the suspension of the judicial process pending the resort to the specialized views of the administrative agency charged by Congress with enforcing the regulatory scheme.

The Court notes that it would be inappropriate to invoke the doctrine of primary jurisdiction were the question before this Court entirely one of statutory interpretation. In *Great Northern Railway Co. v. Merchants Elevator Co.*, (upon which Budd, defendant-intervenor, relies for its claim that the primary jurisdiction doctrine does not apply), the Supreme Court held that where the only issue raised was the interpretation of the words of plain meaning in the tariff schedules, a court need not, and should not, defer to the expertise of an administrative agency. 259 U.S. 285, 291–93, 42 S.Ct. 477, 479–80, 66 L.Ed. 943 (1922). However, where, as here, the issue presented involves complicated questions of administrative policy, practice and proce-

dure, the inclusion of some legal issues does not vitiate the rationale or purpose underlying the doctrine of primary jurisdiction. *See, e.g., United States v. Western Pacific Railroad Co.*, 352 U.S. at 63–64, 77 S.Ct. at 164–65; *Far East Conference v. United States*, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). This Court holds that under the circumstances of this case a remand to the agency on the basis of the doctrine of primary jurisdiction is appropriate.

### CONCLUSION

On the basis of the foregoing, the Court concludes that the Commission is in the best position to evaluate, in the first instance, whether reconsideration of its final determination is appropriate in the circumstances of this case. Moreover, this Court will be in a better position to carry out its reviewing function when it has recourse to the studied views of the Commission. This action is remanded to the International Trade Commission for a finding of whether its threat of injury determination should be reconsidered in light of the Commerce Department's determination in *Amended Final Determination of Sales at Less Than Fair Value and Amended Antidumping Duty Order; Tubeless Steel Disc Wheels From Brazil*, 53 Fed.Reg. 34,566 (Sept. 7, 1988). If the ITC finds that reconsideration of its affirmative threat of injury determination is appropriate or required, it shall make a new determination within the time frame specified in the order. If the ITC finds that a redetermination is not required or appropriate it shall provide a copy of its decision, together with the reasons therefor, to the Court as specified by the Court's order.