Slip Op.  01-148

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| PRECISION SPECIALTY METALS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before:  WALLACH, Judge |
| v. | : | Court No.:  98-02-00291 |
| | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | **PUBLIC VERSION** |
| Defendant. | : | |
| | : | |
| | : | |

[Plaintiff's motion for summary judgment GRANTED.  Defendant's cross-motion for summary judgment DENIED]

Decided: December 14, 2001

Collier Shannon Scott, PLLC, Washington, DC (Mark Austrian, Laurence J. Lasoff, Robin H. Gilbert, John M. Herrmann); Howrey, Simon, Arnold & White, Washington, DC (Jeffrey W. Brennan), for Plaintiff.

Stuart E. Schiffer, Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office; John J. Mahon, Commercial Litigation Branch, Civil Division, Department of Justice, New York, New York; Chi S. Choy, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York, New York, of counsel, for Defendant.

**OPINION**

**WALLACH, Judge.**

# I

## PRELIMINARY STATEMENT

On September 20, 2000, this court in Precision Specialty Metals, Inc. v. United States, 116 F. Supp. 2d. 1350 (CIT 2000) ("Precision I"), denied a motion by Plaintiff Precision Specialty Metals, Inc. ("Precision") for summary judgment, and ordered that the case be set for trial. Familiarity with that decision is presumed. The parties submitted pretrial memoranda during February 2001. After reviewing those memoranda, the court concluded that the issues presented were almost entirely legal, and thus susceptible to resolution or narrowing by motion, rendering trial premature or unnecessary. Transcript of Pretrial Conference dated February 20, 2001 ("Tr.") at 3-4. By order dated February 21, 2001, the court vacated its earlier order for a trial, and directed the parties to submit the case for resolution on motion or motions for summary judgment. This case now comes before the court on Plaintiff's Motion for Summary Judgment Pursuant to United States Court of International Trade Rule 56 ("Plaintiff's Motion for Summary Judgment") and Defendant's Cross-Motion for Summary Judgment ("Defendant's Cross-Motion").

In its Motion for Summary Judgment, Plaintiff Precision contests Customs' denial of drawback on certain entries of stainless steel trim and scrap. Plaintiff argues that the facts stipulated by the parties require a finding that Customs violated 19 U.S.C. § 1625(c)(2), by failing to engage in a notice-and-comment process prior to issuing a ruling which reversed Customs' earlier treatment of 69 similar entries as eligible for drawback. Customs based its denial on a determination that the subject merchandise is "waste" or "valuable waste", and thus

2

is not an "article manufactured or produced" within the meaning of the drawback statute, 19 U.S.C. § 1313(b) (1994). Plaintiff also contends that, as a matter of fact and of law, the merchandise at issue is not waste, and that Plaintiff is entitled to drawback thereon.

In its Cross-Motion, Defendant seeks summary judgment upholding the decision of the Customs Service that the substitution manufacturing drawback claims filed by Precision on entries of stainless steel scrap are not eligible for drawback, and dismissing Precision's action.

For the reasons stated below, the court grants summary judgment in favor of Precision, and denies Defendant's Cross-Motion.

## II
## BACKGROUND

This case involves 38 claims for substitution manufacturing drawback made pursuant to 19 U.S.C. § 1313(b), and Treasury Decision ("T.D.") 81-74. T.D. 81-74 is a general drawback contract for articles manufactured using steel, and provides, in pertinent part, for the allowance of drawback on imported "[s]teel of one general class, e.g. an ingot", where the "merchandise . . . which will be used in the manufacture of the exported products" is "[s]teel of the same general class, specification and grade as the [subject imported] steel[.]" The steel used in the manufacture of the exported products on which drawback is sought must be "used to manufacture new and different articles, having distinctive names, characters and uses." T.D. 81-74 further provides that "no drawback is payable on any waste which results from the manufacturing operation."

3

On October 23, 1991, Precision submitted a letter to Customs expressing its intention to adhere to and comply with the terms of T.D. 81-74. See Appendix Accompanying the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment March 31, 2000 ("App.") A-1. In that letter, Precision described the various steel products on which it would claim drawback. Those products included "stainless steel coils, sheets and trim" of various chemistries identified by industry standards. Id. at 1. Customs granted Precision's request to claim drawback under T.D. 81-74.[1] App. A-4 (Letter from Customs to Precision, dated January 10, 1991 [sic -- 1992]).

Precision filed 116 drawback entries under T.D. 81-74 between December 11, 1991 and May 13, 1996. Rule 56(i) Statement, ¶ 5. Customs liquidated 69 of these entries with full benefit of drawback, in which Precision had claimed exports of stainless steel trim, stainless steel strip, stainless steel scrap and stainless steel coils, [resulting in Precision's receipt of a significant sum of duty drawback.] Id. at ¶ 6. Over that period, Customs routinely requested clarifying information concerning Precision's drawback entries. Id. at ¶ 7. Prior to January 1996, Customs never questioned the eligibility of that merchandise for drawback. Id. at ¶ 7.

Documentation submitted in connection with the remaining entries, which contained the merchandise at issue, described the merchandise by various terms such as "stainless steel,"

---

[1] On July 26, 1993, Precision notified Customs of a change in the terms of its authority to operate under T.D. 81-74 concerning the names of officers of the company who would sign drawback documents on the company's behalf. App. A-5 (Letter from Precision to Customs, dated July 26, 1993). Customs approved this amendment by letter of September 7, 1993 without prejudice to any existing drawback claims on file. App. A-6 (Letter from Customs to Precision, dated September 7, 1993).

"metal scrap," "scrap steel for remelting purposes only," "steel scrap sabot," "stainless steel scrap," and "desperdicio de acero inoxidable."[2]  Id. at ¶ 18.  See App. B at 2.

During 1992 and 1993, when conducting "pre-liquidation reviews" of three drawback claims that involved exports of "[s]tainless [s]teel coil ends and side trim (scrap)", Customs asked Precision for additional information and documentation on the exports involved.  App. A-8 (Letter from Customs to Pat Revoir dated July 10, 1992); App. A-11 (Letter from Gary Appel to Customs dated July 22, 1992).  In response, Precision furnished Customs with additional information and documentation, showing that the exported material was stainless steel scrap.  Customs liquidated each of those three drawback entries for the full amount of drawback claimed.  See App. A-14 (Notice of Liquidation); Rule 56(i) Statement, ¶¶ 8-10.

In January 1996, Customs first questioned the eligibility of Precision's claims involving stainless steel trim for drawback.  See Rule 56(i) Statement, ¶ 7; App. A-7 (January 10, 1996 notice from Customs to Appel-Revoir).  In June 1996, Precision received a Notice of Action informing it that 38 of its drawback entries were being liquidated without the benefit of drawback in full or part, on the basis that "scrap was shown on the export bill(s) of lading" and that "[d]rawback is not available upon exports of valuable waste."[3]  App. A-20.  The entries at issue

_____

[2]     Customs translated this term as "stainless steel waste".  App. B (Customs HQ Ruling 227373, dated Oct. 10, 1997) at 2.  Plaintiff has not submitted any evidence to contradict this translation.

[3]     When required to state the "complete factual basis supporting the U.S. Customs Service's determination that entries filed by or on behalf of the Plaintiff claiming drawback on the merchandise at issue are not eligible for drawback",  Customs responded that "[t]he merchandise in issue is either waste or valuable waste.  Neither waste nor valuable waste are manufactured or produced.  Accordingly, the exportation of the merchandise in issue is not

5

were liquidated on June 14, 1996.  Rule 56(i) Statement, ¶ 14.

<br>

**III**

**ANALYSIS**

**A**

**Standard of Review**

The court subjects this motion for summary judgment to the usual standard on summary judgment.  "Summary judgment is warranted when, based upon the 'pleadings, depositions, answers to interrogatories, . . . admissions on file, . . . [and] affidavits, if any,' the court concludes that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  Peg Bandage, Inc. v. United States, 17 CIT 1337, 1339 (1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (citing Rule 56(d) Rules of the Court of International Trade (1993)).

On a motion for summary judgment, the movant bears the burden of demonstrating that there is no genuine issue of material fact.  United States v. F. H. Henderson, Inc., 10 CIT 758, 760 (1986) (citing SRI Int'l v. Matsushita Elec. Corp. of America, 775 F.2d 1107, 1116 (Fed. Cir. 1985)).  If that burden is not met, there can be no grant of summary judgment.

In reviewing this motion, the court reviews Customs' denial of Plaintiff's protest de novo.  See Rheem Metalurgica S/A v. United States, 20 CIT 1450, 1456, 951 F. Supp. 241, 246

---

eligible for drawback."  See App. C (Plaintiff's First Set of Interrogatories and First Request for Production of Documents (Interrogatory No. 15) and Defendant's Responses thereto (response to Interrogatory No. 15)).

(1996), aff'd 160 F.3d 1357 (Fed. Cir. 1998).  Although the decision of the Customs Service is presumed correct and  "[t]he burden of proving otherwise shall rest upon the party challenging such decision," the court's role in reviewing the decision is to reach the correct result.  28 U.S.C. § 2639(a)(1) (1994); see also Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

If the governing statute is clear on its face, the court must follow Congressional intent, regardless of the existence of an interpretation by Customs to the contrary.  Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).  "[T]he fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position."  United States v. Mead, 121 S.Ct. 2164, 2171 (2001) (footnotes omitted);[4] see also Chevron, 467 U.S. at 842-43.  Agency interpretations which lack the force of law are "entitled to respect . . . but only to the extent that those interpretations have the 'power to persuade'."  Christensen v. Harris County, 529 U.S. 576, 587 (2000) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)); Mead, 121 S.Ct. at 2168.

---

[4]      Where a statute is ambiguous or silent on a specific issue, and it is apparent from the agency's generally conferred authority and other statutory circumstances that Congress expects the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law, a reviewing court "is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable." Mead,121 S.Ct. at 2172  The necessary corollary to this principle is that, where it is not apparent that Congress expects the agency to be able to speak with the force of law, the agency's position is not entitled to deference.

7

**B**

**Customs' Denial of Plaintiff's Protest Did Not Conform to
the Requirements of 19 U.S.C. § 1625(c)**

In Precision I, the court considered Plaintiff's argument that Customs' determination that

Precision's stainless steel scrap is not eligible for drawback can only be applied prospectively,

under 19 U.S.C. § 1625(c)(2) (1994).[5] The court held that, to prevail on its § 1625(c)(2) claim,

_____

[5]        This statute provides as follows:

§ 1625. Interpretive rulings and decisions; public information

(a) Publication.

Within 90 days after the date of issuance of any interpretive ruling (including any
ruling letter, or internal advice memorandum) or protest review decision under
this Act with respect to any customs transaction, the Secretary shall have such
ruling or decision published in the Customs Bulletin or shall otherwise make such
ruling or decision available for public inspection.

* * *

**(c) Modification and revocation.**

**A proposed interpretive ruling or decision which would-**
      (1)     modify (other than to correct a clerical error) or revoke a prior
                interpretive ruling or decision which has been in effect for at least
                60 days; or
      **(2)     have the effect of modifying the treatment previously accorded
                by the Customs Service to substantially identical transactions;
                shall be published in the Customs Bulletin. The Secretary shall give
                interested parties an opportunity to submit, during not less than the
                30-day period after the date of such publication, comments on the
                correctness of the proposed ruling or decision. After consideration of
                any comments received, the Secretary shall publish a final ruling or
                decision in the Customs Bulletin within 30 days after the closing of the
                comment period. The final ruling or decision shall become effective
                60 days after the date of its publication.**

Plaintiff was required to show that Customs' October 10, 1997 denial of Precision's protest was a ruling, and that it changed a "treatment" previously accorded by Customs to substantially identical transactions, and that Customs failed to follow the notice-and-comment procedure outlined in § 1625(c)(2). Precision I, 116 F. Supp. 2d. at 1377. Based on these criteria, the court concluded in Precision I that Plaintiff had not presented the court with sufficient record evidence to conclude that all five elements of § 1625 are satisfied. Id. at 1377-78. The court found that the payment of drawback on 69 previous entries of stainless steel scrap was a "treatment" under § 1625(c) (contingent on a showing by Plaintiff that more than one of these entries was "substantially identical" to the merchandise at issue), because those prior entries constituted more than a single transaction. Id. at 1377. The court determined, however, that Plaintiff had failed to provide the court with evidence documenting its claim that Customs approved drawback on substantially identical transactions.[6] Id. at 1377-78. The court also found that Plaintiff had failed to present the court with any evidence to indicate whether or not Customs followed the notice-and-comment procedure prior to the issuing the October 10 decision. Id. at 1378. The court concluded that the absence of record evidence on these points barred summary judgment in Plaintiff's favor in Precision I. Id.

Plaintiff now claims that the facts stipulated by the parties since the issuance of Precision I establish that Customs approved drawback on substantially identical transactions, and that

19 U.S.C. § 1625 (Emphasis supplied indicates portions on which Plaintiff relies).

[6] Specifically, the court sought a detailed description of the merchandise on which drawback was denied, together with information regarding the dates, ports, and exact nature of each of the earlier transactions. Precision I, 116 F. Supp. 2d. at 1378.

Customs failed to follow the notice-and-comment procedure prior to issuing its October 10th decision. Plaintiff contends that these stipulations remove any issue of disputed fact, and entitle it to summary judgment as a matter of law. Specifically, the parties stipulated that "[t]he transactions described in the export bills of lading for the 69 drawback entries liquidated by Customs between October 15, 1993 and July 7, 1995 with the benefit of drawback were substantially identical to the transactions described in the export bills of lading for the 38 entries for [sic] which Customs liquidated without the benefit of drawback and which are at issue in this litigation." Annex Pursuant to USCIT R. 56(h): Plaintiff's Statement of Material Facts Not in Dispute ("Plaintiff's 56(h) Statement"), ¶ 71. The parties also stipulated that, prior to issuing the October 10th decision, "Customs did not publish this ruling in the <u>Customs Bulletin</u> as a proposed ruling or decision, nor did Customs give interested parties an opportunity to submit – during a period of at least 30 days afterward – comments on the correctness of that ruling. Nor did Customs consider any comments on that ruling, or subsequently publish a final ruling thereafter." Plaintiff's 56(h) Statement, ¶ 78. These facts are sufficient to resolve the factual issues which the court identified in <u>Precision I</u> as precluding summary judgment.

**1**
**The Defendant's Arguments Regarding 19 U.S.C. § 1625(c)(2)**
**Are Cognizable At This Stage In the Litigation**

Despite the government's stipulation of these facts, it interposes legal arguments that challenge the court's construction of § 1625(c)(2), as set forth in <u>Precision I</u>. These arguments represent, in essence, a request to reargue the issues raised in <u>Precision I</u>, in which the court

10

struck the government's briefs.[7]

Although, on its face, USCIT R. 59 provides only for "[a] new trial or rehearing . . . in an action tried without a jury or in an action finally determined," it has been well-recognized that the concept of a new trial under [this Rule] is broad enough to include a rehearing of any matter decided by the Court[.]" Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 584, 623 F. Supp. 1262, 1274 (1985), rev'd on other grounds, 840 F.2d 1547 (Fed. Cir. 1988) (quoting Timken Co. v. United States, 6 CIT 76, 76, 569 F. Supp. 65, 67 (1983), (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2804 at 35 (1973))). Accordingly, the court will consider Defendant's arguments in light of USCIT R. 59.

As this court has previously noted, the grant of a motion for reconsideration is within the sound discretion of the court. Union Camp v. United States, 963 F. Supp. 1212, 1213 (1997) (citing Kerr-McGee Chem. Corp. v. United States, 14 CIT 582, 583 (1990)). "The purpose of a rehearing is not to relitigate a case," but to rectify a significant flaw in the conduct of the original

_____

[7]    Defendant points to the transcript of the February 20, 2001 pretrial conference, at which the court stated, "Does the fact that [Defendant's opposition to Precision's first summary judgment motion] was stricken prohibit the government from raising those arguments now?" Tr. at 7, "I'm not sure it [Precision I] still does [stand]." Tr. at 21. Defendant takes these statements as an invitation for it to relitigate the arguments contained in its stricken brief. Defendant's Memorandum of Law In Support of Its Cross Motion for Summary Judgment at 4. In the pretrial conference, counsel for Precision arguably conceded that it would be appropriate for the court to review the arguments in question: "[I]t would be my view that the Court ought to reach the correct result . . . such that from the practical point of view I am perfectly happy to have this Court take another look at its opinion and see if it changes anything." Tr. at 17-18.
    Defendant also argues that it should not be precluded from raising, at this stage of the litigation, the same arguments contained in its stricken brief in Precision I. Defendant suggests, without citation to any authority, that the court's earlier decision to impose a sanction does not bar the court from considering arguments which could have been raised at that stage of the litigation but were stricken.

11

proceedings. Kerr-McGee, 14 CIT at 583 (citations omitted). Although specific grounds upon which a court may grant such a motion are not listed in the Rule, it is well established that the court will not disturb its decision unless it is "manifestly erroneous." United States v. Gold Mountain Coffee, Ltd., 8 CIT 336, 337, 601 F. Supp. 212, 214 (1984) (quoting Quigley & Mannard, Inc. v. United States, 61 CCPA 65 (1974)).[8] As set forth below, Defendant has failed to demonstrate manifest error in the court's earlier ruling.

**2**

**There Are No Grounds For a Remand to Allow Customs
to Address Plaintiff's Arguments Regarding 19 U.S.C. § 1625(c)(2)**

Defendant argues[9] that remand is necessary, because Precision failed to raise its § 1625

---

[8] Defendant implicitly asks the court to disregard the law of the case doctrine. "The law of the case doctrine holds that 'a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.' " Chung Ling Co., Ltd. v. United States, 17 CIT 829, 836, 829 F. Supp. 1353, 1360 (1993) (citing 1b James W. Moore *et al.,* Moore's Federal Practice ¶¶ 0.404[1] (2d ed.1992)). In other words, it is "the practice of courts generally to 'refuse to reopen what has been decided.' " Koyo Seiko Co., Ltd. v. United States, 19 CIT 873, 880, 893 F. Supp. 52, 57 (1995) (quoting Messenger v. Anderson, 225 U.S. 436, 444 (1912)). "Under this doctrine, a court will generally not reopen an issue already decided unless (1) the evidence in a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of law applicable to such issues, or (3) the decision was clearly erroneous and would work a substantial injustice." Id., 19 CIT at 880, 893 F. Supp. at 57 (citations omitted). Defendant has not presented the court with any of these three factors, nor any other factor, to persuade the court that it should disturb its previous decision. Nevertheless, as Defendant notes, this court is obligated under Jarvis Clark Co., 733 F.2d 873 (Fed. Cir. 1984) to reach the correct decision.

[9] Defendant also argues that the matter should be remanded to Customs to allow it to determine the proper amount of drawback, if any, on the subject entries. Defendant's Mem. at 27 ("Since only a small portion of the imported merchandise resulted in the exported scrap, the amount of duties refundable as drawback for the exported scrap must be properly apportioned.") Plaintiff contests this assertion, noting that "[b]ecause Precision's drawback claims involving

12

argument before Customs.[10]  Specifically, the government argues that Customs should be permitted to determine "if the granting of the 68 [sic] drawback claims involving stainless steel scrap constituted a 'treatment' for purposes of 19 U.S.C. § 1625(c)(2)."  Defendant's Memorandum of Law in Support of Its Cross-Motion for Summary Judgment ("Defendant's Mem.") at 26.  Defendant does not offer any legal theory or authority to support its remand request, nor does Plaintiff direct the court's attention to any authority supporting its position.

Implicit in Defendant's remand claim is reliance upon the doctrine of primary jurisdiction.  The common law doctrine of primary jurisdiction is "designed to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented."  Borlem S.A. - Empreedimentos Industriais v. United States, 13 CIT 231, 234, 710 F. Supp. 797, 800 (1989).  The purpose of the doctrine is "to give effect to legislative intent underlying the established regulatory scheme by referring matters involving agency expertise back to the agency so that it may, in the first instance, pass upon the issue from its unique administrative perspective."  Id.

stainless steel scrap were filed on the basis of the amount of stainless steel 'appearing in' the exported scrap, there is no need or rationale for remanding the claims to Customs for a determination of whether Precision's claims apportioned drawback between stainless steel sheet and strip and stainless steel scrap."  Plaintiff's Response in Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Its Motion for Summary Judgment at 5. Precision correctly notes, however, that Defendant has failed to include a request for remand in its motion, although its briefs devote several pages to the issue.

[10]    Precision does not dispute that it did not raise this argument before Customs. Defendant also argues that Precision failed to identify § 1625 in its summons or complaint as the basis of a claim, thus depriving Defendant of fair notice of the claim.  Defendant argues, without citation, that the court should thus decline to consider the § 1625 claim.  To the extent that Defendant seeks to dismiss this claim, the court declines to do so.

The central concern is the "promotion of uniformity in agency decisions and respect for the deference due the 'expert and specialized knowledge of the agencies.' " Id. (citing United States v. W. Pac. R.R. Co., 352 U.S. 59, 64 (1956)).  The " 'doctrine requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme.' " Id., 13 CIT at 235, 710 F. Supp. at 800 (quoting United States v. Philadelphia Nat. Bank, 374 U.S. 321, 353 (1963)).

Two factors generally guide application of the doctrine:  " '[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over.' " Western Pacific, 352 U.S. at 64 (emphasis added) (quoting Far East Conference v. United States, 342 U.S. 570, 574 -75 (1952)).   "[W]here the question is simply one of construction the courts may pass on it as an issue 'solely of law.'  But where words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, so that 'the enquiry is essentially one of fact and of discretion in technical matters,' then the issue of tariff application must first go to the [agency]." Id. (quoting Great N. Ry. Co. v. Merch. Elevator Co., 259 U.S. 285, 291 (1922)); see also Borlem, 13 CIT at 237, 710 F. Supp. at 802 (it is "inappropriate to invoke the doctrine of primary jurisdiction [where] the question before [the] Court [is] entirely one of statutory interpretation.").  Here, the facts relating to Plaintiff's "treatment" claim have all been stipulated.  The question presented is one of pure statutory interpretation, and the relevant statute does not involve the tariff provisions.  The doctrine of primary jurisdiction does not support remand in this case.

14

**3**

**19 U.S.C. § 1625(c)(2) Governs the Facts of This Case**

Defendant next argues that § 1625(c)(2) is not applicable to these facts, arguing that the court erred in its earlier construction of the term "treatment." After careful consideration, the court is unpersuaded by Defendant's argument.

**a**

**The Actions of Customs' Officers Give Rise to a "Treatment",**

**Without A Showing of Knowledge or Intent**

Defendant contends that "in order to qualify as [a] 'treatment previously accorded to substantially similar transactions,' Customs must have customarily acted in a particular manner which [sic] respect to prior transactions to which it either agreed or determined to be suitable and proper." Defendant's Mem. at 28. Defendant bases its argument on the use of the word "accord" in 19 U.S.C. § 1625(c)(2), which requires the use of the notice and comment procedure where a "proposed interpretive ruling or decision . . . would . . . have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions." Defendant cites the following definition of the term "accord": "1: to bring into agreement: RECONCILE 2a: to grant as suitable or proper b: to allow as concession . . . ." Webster's New Collegiate Dictionary (1977). See Defendant's Mem. At 28. "Accord" is elsewhere defined as:

> **1:** to bring into agreement**:** RECONCILE, HARMONIZE <the scientists'
> conclusions seem contradictory but can be ~*ed* by calm reasoning> **2a:** to grant as
> suitable or proper**:** to render as due <parents have rights which are not ~*ed* to
> strangers or neighbors – A.I. Melden> <formerly, historians ~*ed* to "justice" less
> than its due place – J.G. Edwards> **b:** ALLOW, CONCEDE <the law ~*s* them

15

favored status> <he decided to ~ himself the delight of breaking the news – P.B. Kyne> **c:** AWARD <the President ~*ed* him an honorary title> **d:** ALLOT <in spite of the injustices ~*ed* him> . . . .

Webster's Third New International Dictionary at 12 (1986). Defendant thus argues that, to constitute a treatment under § 1625(c)(2), Customs must have determined the predecessor transactions to be "suitable or proper". Defendant's Mem. at 28-29. Expanding on this theory, Defendant argues that Precision must establish, in addition to the elements identified by the court in Precision I, that Customs "knowingly" granted Precision's claims for drawback on the 69 entries, in order to prevail on its "treatment" theory. Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Cross-Motion For Summary Judgment and Reply in Support of Its Motion for Summary Judgment ("Defendant's Reply Mem.") at 5. The question then arises as to who at Customs must deem the subject transactions "suitable or proper," or "knowingly" grant drawback.

On this issue, Defendant cites 19 C.F.R. § 191.10(a), arguing that there can be no "treatment" where Customs has not performed the verification authorized under this regulation. Notably absent from Defendant's brief is any quotation of the text of this regulation, a reading of which compels the rejection of Defendant's claim. Although subject to slight variants during the years 1991 through 1996, during which Customs granted drawback on the 69 entries claimed to constitute the predicate "treatment," the following iteration is typical in all material respects:

§       191.10 Verification of drawback claims.

(a)      *Claims*. A drawback claim filed under a drawback contract shall be **subject to** verification by the regional Regulatory Audit Division under the jurisdiction of the regional commissioner in whose region the claim is filed when the factory covered by the claim also is located in the same region.

16

19 C.F.R. § 191.10(a) (1992) (emphasis added). The emphasized term, "subject to", indicates that, while any drawback claim **may** be verified, such verification is not performed for every claim. This reading is reinforced by the following subsection, which states that "[i]f the claim **selected for verification** is filed in one region and one or more factories covered by the claim is located in another region, the regional commissioner **selecting the claim** for verification . . . may forward copies of the claim and the drawback contract, and request for verfication to the regional commissioners in whose regions the other factories are located." 19 C.F.R. § 191.10(b) (1992) (emphasis added). Claims are **selected** for verification; verification is not a necessary or inherent part of the drawback process. As with Precision's entries, drawback may be granted on entries made over a period of years, and never be subjected to any verification whatsoever.[11] This fact

---

[11] The government claims that the "preliquidation review" performed by Customs' agents was "cursory in nature and did not cover any interpretive aspect of drawback eligibility pursuant to either the statute or customs regulations." Defendant's Mem. at 30. Customs, however, was presented with numerous opportunities to review Precision's claim for drawback on scrap, starting with Precision's submission of its initial intention to adhere letter, which referenced "trim", another term for scrap. The first of the 69 drawback claims granted by Customs specifically stated that the exported goods included "scrap". See, e.g., Plaintiff's Exs. 44, 44a, 45, 45a, 46, 46a, 47, 47a, 55, 55a, 57, 57a, 73 and 73a (drawback entry forms and liquidation notices thereon). Customs granted drawback on this, and 68 other entries similarly denominated. Indeed, there is nothing in the provisions of 19 C.F.R. § 191.10(a) which requires any greater scrutiny by Customs than that given by those officials who granted Precision's 69 claims.

Similarly, Customs' claims that "the nature of the merchandise which Precision manufactured and exported was far from clear," Defendant's Mem. at 30, is irrelevant under the "treatment" provisions. Even if it were relevant, the Court finds those claims disingenuous, in light of the consistent trail of correspondence and submissions in which Precision and its agents describe the entries on which drawback was granted as "scrap". See, e.g., Plaintiff's Exs. 1a (letter dated July 22, 1992 from G. Appel to V. Golloday of Customs), 1j, 1k, 1l (including copies of "scrap tickets"), 71, 71a (letter dated Oct. 1, 1993 from G. Appel to R. Ficek of Customs).

precludes the adoption of Defendant's argument. If the court were to hold that verification is an essential prerequisite for the creation of a "treatment" under § 1625(c)(2), the provisions of that section would be eviscerated; where there is no assurance that the entries are subject to verification, there is no assurance of "treatment."

The government also argues that Customs "never articulated a position that stainless steel scrap was eligible for drawback which could constitute a 'treatment' within the intended meaning of § 1625(c)(2)." Defendant's Mem. at 32 (citations omitted). This argument equates "position" with "treatment", a link that must be rejected, based on the face of § 1625(c)(2) and on its legislative history. As this court noted in Precision I, "the use of the word 'treatment', rather than 'position', represents a Congressional departure from the language of the apparent source text of [19 CFR] § 177.10. The court can only assume that this change was made in an effort to move away from the strict judicially-created definition of the term 'position'", Precision I, 116 F. Supp. 2d at 1377, particularly as the requirements of § 1625 "already appeared, in more detailed and discretionary form," id. at 1374, in § 177.10, and since "Congress . . . is presumed to know the existing law pertinent to legislation it enacts," id. at 1375.

Precision argues that Customs' reading would "completely eliminate the statute's clear bifurcation of Customs' treatment of 'substantially identical transactions' under § 1625(c)(2), in contrast to the consideration of Customs' 'policies' or 'positions' under § 1625(c)(1)." Plaintiff's Reply Mem. at 9. The government replies, correctly, that "the terms 'policy' and position' do not appear in either subsections (c)(1) or (c)(2)," and argues (without citation) that "[a]ll of § 1625 relates to Customs policies and positions," contending that "(c)(1) relates to

18

Customs policies and positions as revealed in written form, i.e., 'prior interpretive ruling or decision,' while subsection (c)(2) covers the situation where Customs policy was not written up but was manifested in Customs Service action." Defendant's Reply Mem. at 6. The government attempts to buttress its argument, arguing that the court erred in finding that the use of the term "treatment" constituted a departure from the use of the term "position" in the apparent source text of 19 CFR § 177.10. Rather, contends the government, the statutory language "treatment previously accorded by the Customs Service to substantially identical transactions" "was likely adopted from 19 CFR § 177.9, not § 177.10." Defendant's Reply Mem. at 6.

19 C.F.R. § 177.9, the subsection which uses the cited language, makes no mention of "positions," "policies" or "practices." This section (Customs' own regulation) is the apparent source text from which the term "treatment" was grafted onto § 177.10. A review of this section further reinforces the distinction drawn between the terms "treatment" and "position" in Precision I. 19 C.F.R. § 177.9 describes in detail the types of proof needed to establish a "treatment" under the regulatory scheme which Congress adopted in § 1625(c)(2):

> In applying to the Customs Service for a delay in the effective date of a ruling letter [which has the effect of modifying a treatment previously accorded by Customs to substantially identical transactions], an affected party must demonstrate . . . that the treatment previously accorded by Customs to the substantially identical transactions was sufficiently consistent and continuous that such party reasonably relied thereon in arranging for future transactions. The evidence of past treatment by the Customs Service shall cover the 2-year period immediately prior to the date of the ruling letter, listing all substantially identical transactions by entry number (or other Customs assigned number), the quantity and value of merchandise covered by each such transaction (where applicable), the ports of entry, and the dates of final action by the Customs Service. The evidence of reliance shall include contracts, purchase orders, or other materials tending to establish that the future transactions were arranged based on the

19

treatment previously accorded by the Customs Service.

19 C.F.R. § 177.9(e)(2) (2000). The only proof needed to establish a treatment is a description of the transactions; the only intent referenced by the regulation is that of the **importer**, in arranging its affairs in reliance on the treatment.

This reading is further reinforced by a review of the notice proposing the amendments that added the relevant language to § 177.9. Defendant argues that this reflects Congress' intent in later enacting 19 U.S.C. § 1625(c)(2), and that this notice demonstrates that there was no "intent to broaden the scope of § 1625(c)(2) to actions that did not reflect the policies and positions of the Customs Service even though they had not been expressed in written rulings or decisions." Defendant's Reply Mem. at 7. While Customs' notice may or may not be probative of Congress' intent, the notice directly contradicts the government's assertion. It reads, in pertinent part, as follows:

Uniformity of Customs Officers' Decisions

Section 7361(c) of the Anti-Drug Abuse Amendments Act of 1988 (Title VI, Pub. L. 100-690) requires the Secretary of the Treasury to promulgate **regulations to provide for nationwide uniformity of certain decisions made by U.S. Customs Service officers** and to establish procedures by which certain parties affected by the lack of such uniformity may have the alleged inconsistencies resolved.

**The number of Customs Service personnel charged with decision-making responsibilities affecting the importation of merchandise at the various ports of entry in the United States is substantial.** Notwithstanding the existence of a variety of programs and procedures designed to foster uniformity in the decisions it makes, Customs recognizes that inconsistent decisions occur and will inevitably continue to occur.
* * *
**Although nationwide inspection/examination guidelines are issued** from time to time, **the effective enforcement** by the Customs Service of the tariff and other

20

laws it is charged with enforcing **requires that these guidelines be applied with local discretion** and be augmented by random examinations in order that no importation ever be assured beforehand that it will be exempt from physical examination. Nevertheless, the Customs Service realizes that the decision to examine merchandise at one port while entry of identical merchandise is permitted at another port without examination may be perceived as an inconsistency.

The **Customs Service recognizes that even the small number of real or apparent inconsistencies that occur may pose immediate and grave consequences to the parties directly involved, as well as to the businesses and enterprises whose livelihood depends on the utilization of the particular import facilities and services at the port where the inconsistencies are alleged to exist.** Moreover, insofar as the assessment of Customs duties is concerned, uniformity is mandated by Article 1, Section 8 of the Constitution of the United States. The Customs Service therefore proposes to establish a procedure whereby alleged inconsistencies in decisionmaking may be brought directly to the attention of Customs Headquarters by affected parties for expedited resolution.
\*\*\*

The petitioning party will be required to furnish information sufficient to document that apparent inconsistencies exist. In the case of entries of merchandise alleged to have been treated inconsistently, the competing entries must be identified as to port of entry, date, and entry number and the merchandise must be fully described (including brand names, when present and samples, if possible) . . . . In the case of other alleged inconsistencies, the competing entries or other transactions or events must be described in sufficient detail that the Customs Service may quickly verify with the Customs field officials involved that the facts are as alleged.
\*\*\*

The **Customs Service also proposes to add a new paragraph, (e) to §§ 177.9**, Customs Regulations (19 CFR 177.9(e)), to provide for a similar delay **in the event the Customs Service issues a ruling which, although the matter is not covered by an earlier ruling, modifies the treatment previously accorded to substantially identical transactions by the Customs Service**. Affected parties must request that such a delay be granted and must include with that request information identifying the past transactions claimed to have been relied on as well as evidence of that reliance. As with the requests for a delayed effective date made under proposed §§ 177.9(d)(3), Customs Regulations (19 CFR 177.9(d)(3)), the Customs Service will respond to all such requests individually or by a general notice published in the Customs Bulletin.

Proposed Rules:  Certain Administrative Procedures, 54 Fed. Reg. 8208, 8209-10 (Feb. 27, 1989)

(emphasis added).  The last quoted paragraph belies Defendant's assertion.  Subsection 177.9(e) is designed to provide rights to importers aggrieved by a new ruling where "the matter is not covered by an earlier ruling" and the new ruling "modifies the treatment previously accorded substantially similar transactions."  This notice recognizes the fact that individual Customs officers may formulate disparate "treatments".  As noted in Precision I, this term is distinct from the officially formulated "ruling", "position" or "policy".

The government has failed to point to anything in the language or the legislative history of, or the regulatory scheme surrounding, § 1625(c)(2) which persuades the court that its earlier holding -- that "[t]he term 'treatment' looks to the *actions* of Customs, rather than its 'position' or policy" – is erroneous.  Precision I, 116 F. Supp. 2d at 1377 (emphasis in original).  Accordingly, the court finds no legal basis for a review of Customs' factual arguments that "the nature of the merchandise which Precision manufactured and exported was far from clear."  Defendant's Mem. at 30.

This reading of § 1625(c)(2) is consistent with, and furthers, the legislative history underlying the Customs Modernization Act, which was passed as part of the North American Free Trade Agreement Act, Pub. L. 103-182 § 623 (1993), and substantially amended 19 U.S.C. § 1625:

> The guiding principle in our discussions with the trade community is that of "shared responsibility".  Customs must do a better job of informing the trade community of how Customs does business; and the trade community must do a better job to assure compliance with U.S. trade rules.
> . . .
> As a general statement, Customs supports the JIG concept of "informed compliance."  Importers have the right to be informed about Customs rules and regulations, and its interpretive rulings and directives, and to expect certainty that

22

the ground rules would not be unilaterally changed by Customs without the proper notice and an opportunity to respond.

Customs Modernization and Informed Compliance Act: Hearing on H.R. 3935 Before the House Comm. on Ways and Means, Subcomm. on Trade, 102d Cong. 91 (1992) (statement of Commissioner Carol Hallett, United States Customs Service).  See also S. Rep. No. 103-189 at 64 (1993) ("Title VI also implements the concept of 'informed compliance,' which is premised on the belief that importers have a right to be informed about customs rules and regulations, as well as interpretive rulings, and to expect certainty that the Customs Service will not unilaterally change the rules without providing importers proper notice and opportunity for comment.").  The government has failed to point to any contravening legislative history or other authority.

**b**

**Precision Complied With the Conditions for Drawback**

Defendant then argues that a finding that the 69 earlier entries constituted a "treatment", which requires a notice and comment process to change, "would impermissibly reward plaintiff's failure to comply with the statute, regulations and contract."  Defendant's Mem. at 32, (citing Guess?, Inc. v. United States, 944 F.2d 855, 858 (1991) (Drawback involves an exemption from duty, and is thus "a statutory privilege due only when enumerated conditions are met."); 19 U.S.C. § 1313(l) ("Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe . . . .")).  Defendant claims that Precision failed to comply with the terms of the drawback statute

because, according to Defendant,[12] Precision claimed drawback on waste, rather than articles that had been manufactured or produced. Defendant's Mem. at 34.

The court must reject this argument. Defendant asks the court to hold Precision to a standard that Customs itself did not follow, insofar as Customs accepted Precision's initial letter of intent to adhere, and approved 69 entries thereafter. Defendant has pointed to nothing in the regulations or Customs laws that Precision has contravened. In short, the eligibility of stainless steel scrap for drawback was a gray area. If the court finds the provisions of § 1625(c) inapplicable where Customs changes its treatment in a gray area of the drawback law, then § 1625(c) will have no applicability in any situation. The court leaves for another day the question of whether § 1625(c) is vitiated when the alleged "treatment" by Customs is the approval of drawback against the explicit regulatory or statutory denial of drawback on the goods at issue.

**c**

**§ 1625 Is Not Equitable Estoppel**

Defendant cites the long-established tenet that "a party cannot claim estoppel against the Government based upon the actions of an agency employee." Id. at 32. Defendant, however, abbreviates the oft-cited rule, which applies to **equitable** estoppel. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases . . . . [T]he party claiming the estoppel

---

[12]    Defendant claims that the court concluded in Precision I that Precision's scrap is not a manufactured or produced article under 19 U.S.C. § 1313(b). The court made no such finding in Precision I. Rather, it found that Precision had not met its burden on summary judgment, leaving the court with insufficient evidence to issue a finding as to whether or not scrap is waste. Precision I, 116 F. Supp. 2d. at 1371. Notably absent from Precision I is any finding that scrap is waste or valuable waste.

24

must have relied on its adversary's conduct in such a manner as to change his position for the worse." Heckler v. Comm. Health Serv. of Crawford County, Inc., 467 U.S. 51, 58 (1984). Precision's claims rest not in equity but in the law, through which Congress has selectively and explicitly waived assertion of any rights it might otherwise have in this regard.

In any event, application of the rule set forth in § 1625(c)(2) does not estop the government; it merely requires the government to comply with a statutorily mandated notice-and-comment process before implementing a ruling or decision that changes an earlier treatment. So long as Customs chooses not to follow this process, it is bound by its earlier treatment; Customs may, however, at any time comply with the notice and comment procedure set forth in 19 U.S.C. § 1625, and thus impose a new ruling or decision, consistent with the statute, denying drawback on stainless steel scrap or trim. This process, as Congress and Customs alike evidently intended, provides importers with some predictability in structuring their business, while retaining for Customs flexibility in the exercise of its administrative authority.

In light of this holding, it is unnecessary for the court to reach the issue of whether stainless steel scrap is an article manufactured or produced, under 19 U.S.C. § 1313(b), or waste. Until Customs follows the notice-and-comment procedure set forth in 19 U.S.C. § 1625(c), it is bound by, and all entries in this case are subject to, its earlier treatment of stainless steel scrap as eligible for drawback.

## IV

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted.

Defendant's Cross-Motion for Summary Judgment is denied.

_____
Evan J. Wallach, Judge

Dated: December 14, 2001
      New York, New York