Slip Op. 04-122

# UNITED STATES COURT OF INTERNATIONAL TRADE

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

|  |  |  |
|---|---|---|
| CALIFORNIA INDUSTRIAL PRODUCTS, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Before: WALLACH, Judge |
| v. | : | Court No.: 98-04-01087 |
| | : | |
| UNITED STATES, | : | |
| | : | **PUBLIC VERSION** |
| Defendant. | : | |

‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗‗

[Plaintiff's Motion for Summary Judgment is Granted. Defendant's Motion for Summary Judgment is Denied]

Decided: September 22, 2004

Collier Shannon Scott, (Mark L. Austrian, Robin H. Gilbert and John M. Herrmann) for Plaintiff.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Acting Attorney in Charge; Harry A. Valetk, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice; Chi S. Choy, Of Counsel, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, for Defendant.

**WALLACH, Judge:**

## OPINION

### I
### Introduction

This matter is before the court on cross-motions for summary judgment, pursuant to

USCIT R. 56, by Plaintiff, California Industrial Products, Inc., ("CIP") and Defendant, United

1

States. At issue, is the United States Customs Service's[1] ("Customs") decision that certain of CIP's substitution manufacturing drawback claims were not eligible for drawback pursuant to 19 U.S.C. § 1313(b) (1999).[2] The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (1999). For the following reasons, Plaintiff's Motion for Summary Judgment is granted and Defendant's Cross-Motion for Summary Judgment is denied.

## II
## Background

At issue in this case are two claims for substitution manufacturing drawback made by the Plaintiff pursuant to 19 U.S.C. § 1313(b) and Treasury Decision ("T.D.") 81-74.[3] On February

---

[1] Now the United States Bureau of Customs and Border Protection.

[2] Under 19 U.S.C. § 1313(b) (1999), substitution for drawback purposes,

> if imported duty-paid merchandise and any other merchandise (whether imported or domestic) of the same kind and quality are used in the manufacture or production of articles within a period not to exceed three years from the receipt of such imported merchandise by the manufacturer or producer of such articles, there shall be allowed upon the exportation, or destruction under customs supervision, of any such articles, notwithstanding the fact that none of the imported merchandise may actually have been used in the manufacture or production of the exported or destroyed articles, an amount of drawback equal to that which would have been allowable had the merchandise used therein been imported, but only if those articles have not been used prior to such exportation or destruction; but the total amount of drawback allowed upon the exportation or destruction under customs supervision of such articles, together with the total amount of drawback allowed in respect of such imported merchandise under any other provision of law, shall not exceed 99 per centum of the duty paid on such imported merchandise.

[3] This treasury decision is a general drawback contract, the former name for drawback rulings, for articles manufactured using steel. It provides for the allowance of drawback on imported

> "[s]teel of one general class, e.g. an ingot", where the "merchandise * * * which will be used in the manufacture of the exported products" is "[s]teel of the same

2

16, 1994, CIP submitted to Customs a notice of intention to claim drawback, pursuant to 19 U.S.C. § 1313(b), for substitution manufacturing drawback involving articles manufactured using steel and stated that it intended to comply with T.D. 81-74. CIP did not reference scrap or synonyms for scrap in its original February 16, 1994, letter. Customs approved Plaintiff's request that it be permitted to claim drawback on exports of steel, based on the terms of a general drawback contract, T.D. 81-74. The terms of the contract were set forth in a letter issued by Customs in 1981 and those terms were accepted by CIP's February 16, 1994, letter, subject to providing certain additional information that was required by the Regional Commissioner of Customs in Chicago. On or about April 7, 1994, Customs sent Plaintiff an acknowledgment of Plaintiff's acceptance of the general contract.

In a letter dated October 25, 1995, Plaintiff contacted Customs to revise its original letter of intent.[4] The letter expressed CIP's "revised intention to adhere to and comply with the conditions of drawback contract 81-74 under 19 U.S.C. § 1313(b), articles manufactured using steel;" it did not mention scrap or synonymous terms for scrap.[5] Letter from Richard M. Kilbane, Vice President, Finance, California Industrial Products, Inc., to Ms. Sylvia Pfeffer, U.S. Customs

---

general class, specification and grade as the [subject imported] steel[.]" The steel used in the manufacture of the exported products on which drawback is sought must be "used to manufacture new and different articles, having distinctive names, characters and uses."

Precision Specialty Metals, Inc. v. United States, 24 CIT 1016, 1017-18 (2000) ("Precision I") (citing T.D. 81-74). The decision also provides that "'no drawback is payable on any waste which results from the manufacturing operation.'" Id. at 1018.

[4] There are no further facts on the record as to the substance of the revision.

[5] In its letter, CIP described the type of steel as "carbon steel coils, ASTM A569, A366, AISI 1006, 1008, 1010, 1020, 1050, 1070, 1075, 10B50."

Service (Oct. 25, 1995). Customs acknowledged the receipt of CIP's October 25, 1995, letter in a letter dated January 12, 1996, and indicated that CIP's October 25, 1995, letter superceded CIP's prior letter of intent, dated February 16, 1994, and Customs' acknowledgment letter dated April 7, 1994, without prejudice to any existing claims before the Port of Chicago.

Plaintiff retained Appel-Revoir, Inc. ("Appel-Revoir"), a drawback consulting firm, to assist it in preparing, filing and processing its drawback claims. Between December 2, 1995, and March 7, 2002, CIP made 26 drawback entries.[6] The first entry at issue, entry number RM5-0000052-9, was entered on December 2, 1995. The description that appeared on its bill of lading, which was filed with Customs, stated: Carbon Steel, AISI 1050; AISI 1070, Iron and Steel Scrap. Agreed Statement of Facts at 2 ¶ 7. The second entry number at issue is RM5-0000053-7, entered on December 6, 1995. The description that appeared on its bill of lading that was filed with Customs, stated: Carbon Steel, AISI 1050; AISI 1070, Iron and Steel Scrap for Remelting only. Id.

CIP received accelerated payment[7] for 13 claims of the 26 claims it had filed seeking drawback.[8] Customs also granted one claim because it did not involve steel scrap. Customs did

---

[6] Both of the claims at issue in this action were prepared by Appel-Revoir.

[7] Accelerated payment eligibility, under 19 C.F.R. § 191.72(a) (1997), provides that "[a] drawback claimant not delinquent or otherwise remiss in transactions with Customs is eligible . . . for accelerated payment of drawback on claims which are properly prepared and fully completed," in accordance with the regulation. Eligibility for accelerated payment is determined at liquidation. 19 C.F.R. § 191.71. After liquidation, the drawback office certified payment of any amount due or demands a refund of excess amounts paid. 19 C.F.R. § 191.72(c).

[8] The drawback claims prepared by Appel-Revoir for CIP included a request for accelerated payment of drawback and were filed with the Port of Chicago between December 2, 1995 and May 13, 1996.

not give CIP a decision regarding its eligibility for drawback on the 13 claims of steel scrap at the time of accelerated payment. Two of these claims were subsequently liquidated on January 2, 1998, without drawback. Customs then demanded the return of the accelerated payments on the two claims at issue in this case. The remaining 11 claims were liquidated on April 11, 2003.[9]

Plaintiff received two Notices of Action pursuant to Customs Form 29 dated January 2, 1998, saying that two of its drawback entries were denied based on Customs' determination that CIP impermissibly claimed drawback on scrap. Customs said that its Headquarters Ruling Letter 210988, issued on October 29, 1979, stated Customs' position that drawback is not allowed on valuable waste, including steel scrap. Customs denied duties on an accelerated basis.[10] CIP requested further review of its protests, which was granted by the Customs' Drawback Office at the Port of Chicago, Illinois. However, Customs denied CIP's protest concerning the two entries at issue based on the analysis contained in the Customs Headquarters Ruling Letter 227375, dated October 10, 1997 ("HQ 227375"). Agreed Statement of Facts at 2 ¶ 10.

---

[9] Plaintiff states that

> [t]he remaining 11 claims for which CIP received accelerated payment - totaling [$230, 878.32] - had been placed in a suspended status pursuant to an agreement between CIP and Customs, as reflected in correspondence between CIP and Customs dated September 22, 1998, October 2, 1998, and November 13, 1998. Those claims were subsequently liquidated by Customs on April 11, 2003. CIP timely protested those liquidations, and Customs has agreed with CIP to take no action on those protests pending the outcome of this litigation.

Plaintiff's Motion for Summary Judgment Pursuant to United States Court of International Trade Rule 56 ("Plaintiff's Motion") at 6.

[10] Plaintiff has paid all liquidated duties with respect to the protested entries at issue in this action and thus exhausted its administrated remedies, consistent with 28 U.S.C. § 2637(a). CIP also timely filed its Summons and Complaint with the court.

5

**III**
**Arguments**

Plaintiff argues that Customs' interpretation of 19 U.S.C. § 1625(c)(2) and the Customs

Modification Act ("Mod Act") is contrary to the law. Defendant claims that "[s]ince CIP's

contract did not specify that steel scrap would be exported, steel scrap is not eligible for

drawback under 19 U.S.C. § 1313(b)." Defendant's Memorandum in Support of Defendant's

Cross-Motion For Summary Judgment and in Opposition to Plaintiff's Motion for Summary

Judgment at 1 ("Defendant's Cross-Motion") at 1. Defendant also argues that Plaintiff may not

claim that it is eligible for a "treatment" under 19 U.S.C. § 1625(c)(2)[11] because of the similar

"treatment" Customs' accorded to another importer's transactions. See id. at 5.

**IV**
**Applicable Legal Standards**

The court reviews Customs' denial of a protest *de novo*. See Rheem Metalurgica S/A v.

United States, 20 CIT 1450, 1456 (1996), *aff'd,* 160 F.3d 1357 (Fed. Cir. 1998). It grants

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

---

[11] 19 USC §1625(c)(2) provides in relevant part:

> A proposed interpretive ruling or decision which would –
>
> (2)     have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transaction;
>
> shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c) (2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In a motion for summary judgment, the movant bears the burden of producing evidence showing the lack of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); see also Precision Specialty Metals, Inc. v. United States, 182 F. Supp. 2d 1314, 1318 (CIT 2001) ("Precision II"). In determining if a party has met its burden the court does not "weigh the evidence and determine the truth of the matter," but rather the court determines "whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. It views the evidence in the light most favorable to the non-moving party and draws all inferences in the nonmovant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962).

## VI
## Discussion

### A
### Customs' Interpretation of 19 U.S.C. § 1625 is Not Afforded Deference by the Court

The court does not afford deference to Customs' interpretation of 19 U.S.C. § 1625 on the grounds that (1) HQ 227375 was an inconsistent treatment of Plaintiff's claim for drawback, and (2) Customs' attempts to retroactively apply its statute and regulations is contrary to law.

### 1

### Customs Ruling Letter 227375 is Not Afforded Deference by the Court

Defendant argues that the court should afford HQ 227375 deference.

When Congress grants authority to an agency to promulgate regulations necessary for the

administration of programs it oversees, that authority permits the agency to fill gaps left in the statutory scheme. See Contreras v. United States, 215 F.3d 1267, 1274 (Fed. Cir. 2000). The Supreme Court's decision in United States v. Haggar Apparel Co., 526 U.S. 380, 394, 119 S. Ct. 1392, 143 L. Ed. 2d 480 (1999) makes clear that the court must give Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, 467 U.S. 837, 81 L. Ed. 2d 694, 104 S. Ct. 2778 (1984), deference to those valid agency regulations interpreting a statute. The Supreme Court held in United States v. Mead Corp., 533 U.S. 218, 234-35, 150 L. Ed. 2d 292, 121 S. Ct. 2164 (2001), that Customs classification rulings, while not afforded Chevron deference may be entitled to Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944), deference. Under the Skidmore standard, "[a] classification ruling . . . may . . . at least seek a respect proportional to its 'power to persuade.'" Mead, 533 U.S. at 235 (quoting Skidmore, 323 U.S. at 140). Mead teaches that whether Skidmore deference is applicable to a Customs classification ruling varies depends on "its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight." Id.; see also Structural Indus. v. United States, 356 F.3d 1366, 1370 (Fed. Cir. 2004).

In this case, HQ 227375 will not be granted deference. While Customs may change a view it believes to have been grounded upon a mistaken legal interpretation,[12] the consistency and predictability of an agency's position is a factor in assessing the weight that position is due.

---

[12]  Indeed, "an administrative agency is not disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision . . .." Good Samaritan Hosp., 508 U.S. at 417 (citing NLRB v. Local Union No. 103, Int'l Ass'n of Bridge, 434 U.S. 335, 351, 98 S. Ct. 651, 54 L. Ed. 2d 586 (1978)); see also NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 787, 110 S. Ct. 1542, 108 L. Ed. 2d 801 (1990); NLRB v. J. Weingarten, Inc., 420 U.S. 251, 265-66, 95 S. Ct. 959, 43 L. Ed. 2d 171 (1975)).

See Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 417, 113 S. Ct. 2151, 124 L. Ed. 2d 368 (1993) (citing Automobile Club of Mich. v. Commissioner, 353 U.S. 180, 180-83, 77 S. Ct. 707, 1 L. Ed. 2d 746 (1957)). "An agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." INS v. Cardoza-Fonseca, 480 U.S. 421, 448, n.30, 107 S. Ct. 1207, 94 L. Ed. 2d 434 (1987) (emphasis added) (quoting Watt v. Alaska, 451 U.S. 259, 273, 101 S. Ct. 1673, 68 L. Ed. 2d 80 (1981)). "How much weight should be given to the agency's views in such a situation, and in particular where its shifts might have resulted from intervening and possibly erroneous judicial decisions and its current position . . . will depend on the facts of individual cases." Good Samaritan Hosp., 508 U.S. at 417.

Here, the ruling letter at issue is not entitled to Skidmore deference. Customs has not demonstrated that it followed a consistent pattern of rulings in granting drawback on steel scrap; it granted drawback on substantially similar product during the same time period that CIP submitted its drawback claims. Plaintiff's Motion at 3, 6.

**2**

**Defendant's Argument that 19 U.S.C. § 1625 Merits Chevron Deference is Erroneous Because Defendant Cannot Retroactively Apply Its Regulations**

Defendant claims that, because 19 U.S.C. § 1625(c)(2) is silent as to whether Customs must grant the same "treatment" to other importers, a recently promulgated Customs regulation, 19 C.F.R. § 177.12(c) (2002), interpreting 19 U.S.C. § 1625(c), is entitled to deference. Defendant's Cross-Motion at 8. Defendant states that previously "Customs did not have the proper regulations in place to interpret 19 U.S.C. § 1625 as amended by the Customs

9

Modernization Act of 1993 . . ..” Id. at 9.

Plaintiff claims that “no deference can be given to Customs’ interpretation of Section 1625(c)(2), as amended, because ‘the agency has simply not interpreted the new statute [19 U.S.C. § 1625].’” Plaintiff’s Motion at 7 (citing Am. Bayridge Corp. v. United States, 22 CIT 1129, 1151 (1998), *vacated on other grounds*, 217 F.3d 857 (Fed. Cir. 1999)).

Defendant claims that “[c]ourts have never made deference to an agency’s interpretation dependant on the effective date of a regulation.” Defendant’s Cross-Motion at 10.[13] Defendant’s claim that “Customs did not have the proper regulations in place to interpret 19 U.S.C. § 1625 as amended by the Customs Modernization Act . . .,” Id. at 9 (emphasis added), misses the crucial point that Customs did not in fact have any interpretation, position, or policy in place regarding the statute during the time when both that case and this matter arose. See Am. Bayridge, 22 CIT at 1145-46 (stating that Customs cannot continue to use its old regulations to implement the new statute nor can it legitimately attempt to reconcile its new regulations with the new statute as the recently promulgated regulations conflict with the clear words of 19 U.S.C. § 1625(c)). As stated in the Agreed Statement of Facts that the parties submitted, Plaintiff’s drawback claims were

_____

[13] Defendant’s reliance on Smiley v. Citibank, 517 U.S. 735, 739-41, 116 S. Ct. 1730, 135 L. Ed. 2d 25 (1996) and Princess Cruises, Inc. v. United States, 201 F.3d 1352, 1360-1361 (Fed. Cir. 2000), for this proposition is misplaced. In both Smiley and Princess Cruises, an administrative agency had legitimately interpreted a statute or had a valid position or policy in place before they made a decision against the opposing party. That position or policy was the basis for the decision. The agency then codified its position either during or before the opposing party filed suit challenging the agency’s decision. Smiley, 517 U.S. at 739-41. Smiley held that neither an agency’s delay in promulgating a regulation nor the fact that “it was litigation which disclosed the need for the regulation” affects the court’s deference to the agency’s interpretation of an ambiguous statute as embodied in such regulations. Id. at 741; see also Princess Cruises, 201 F.3d at 1360-61. Thus, what was challenged in both cases was the decision based on the agency’s promulgated position or policy.

denied on the basis of the analysis made in the 1997 HQ 227375. Subsequent to both denial of CIPs claims of drawback and this court's decision in Am. Bayridge, Customs promulgated 19 C.F.R. § 177.12(c), formalizing an interpretation of 19 U.S.C. § 1625(c), on August 16, 2002. Administrative Rulings, 67 Fed. Reg. 53,483 (Aug. 16, 2002).

Defendant's argument that, because 19 U.S.C. § 1625(c)(2) is silent on whether Customs must grant the same "treatment" to other importers, the recently promulgated Customs regulation, 19 C.F.R. § 177.12(c), is entitled to deference, is fundamentally inconsistent with principles of statutory interpretation. As a general rule, a statutory grant of legislative rulemaking authority will not encompass the power to promulgate retroactive rules unless that power is expressly conveyed by Congress. Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 102 F. Supp. 2d 486, 493 (CIT 2000); see Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988); see also Brimstone R. & Canal Co. v. United States, 276 U.S. 104, 122, 48 S. Ct. 282, 72 L. Ed. 487 (1928). Thus, "an administrative regulation will not be construed to have retroactive effect unless the language requires such a result." Rhone Poulenc, Inc. v. United States, 14 CIT 364, 365 (1990). There is no indication in the legislative history of 19 U.S.C. § 1625 that Congress intended to afford to Customs the power to regulate retroactively. See Am. Bayridge, 22 CIT at 1150. Therefore, the court will not afford any deference to Customs' new statutory interpretation embodied in regulations made subsequent to Customs' denial of drawback for Plaintiff's entries.

11

**B**

**CIP May Claim a "Treatment" Similar to that Afforded to a Third Party**

**1**

**The Precision Cases are Directly Applicable to the Case at Hand and Support CIP's Claim of Drawback**

Defendant argues that Plaintiff may not claim a "treatment" under 19 U.S.C. § 1625(c)(2) because of the duty drawback Customs accorded to the transactions of another importer. Defendant here stated in its brief that "Customs had specifically, inadvertently, and erroneously granted drawback for 69 of Precision Specialty Metals' own claims involving exported steel scrap." Defendant's Cross-Motion at 7. During oral argument on May 12, 2004, Defendant explained that the government was taking the position in this case that the grant of drawback in the Precision Specialty Metals[14] (hereinafter Precision I and Precision II are referred to collectively as "the Precision cases") cases was erroneous.

Plaintiff claims that 19 U.S.C. § 1625(c)(2) requires Customs to grant its drawback claims involving exported steel scrap and relies on the court's decisions in the Precision cases for the proposition. It claims that the facts in the Precision cases are the same as in the case at hand, and thus the court should similarly grant CIP's claim of drawback.

The Precision cases, as Plaintiff argues, do indeed provide persuasive reasoning to

_____

[14] Precision I, 24 CIT at 1016, and Precision II, 182 F. Supp. 2d at 1314, are related cases where the court initially denied the plaintiff's motion for summary judgment and ordered that the case be set for trial. After reviewing the memoranda submitted by the parties, the court determined that the issues presented were almost entirely legal and ruled on the motions for summary judgment. Precision II, 182 F. Supp. 2d at 1314. By order dated February 21, 2001, the court vacated its order for a trial, and directed the parties to submit the case for resolution on motions for summary judgment. Id. at 1314.

12

support Plaintiff's claimed drawback. In the Precision cases, a manufacturer challenged Customs' denial of substitution manufacturing drawback on steel trim and scrap the manufacturer had imported. Customs had initially granted drawback to five claimants, Calstrip, Combined Metals of Chicago, Precision Specialty Metals, Thypin and Ulbrich (hereinafter "drawback claimants"), whose claims involved steel scrap. Customs subsequently denied drawback, claiming that the entries were ineligible "waste" and not articles "manufactured or produced" as required by the duty exemption.[15] Precision II, 182 F. Supp. 2d at 1316.

The court in Precision II rejected the defendant's argument based on the plain language and legislative history of 19 U.S.C. § 1625(c)(2) and explained that the defendant had erroneously equated a "position" an agency has taken with a "treatment." Id. at 1325. The court explained that "'the use of the word 'treatment,' rather than 'position', represent[ed] a Congressional departure from the language of the apparent source text of [19 C.F.R.] § 177.10."[16]

_____

[15] The manufacturer had initially submitted a letter expressing its intent to comply with T.D. 81-74 and claim drawback on various steel products, which "included 'stainless steel coils, sheets and trim' of various chemistries identified by industry standards." Precision II, 182 F. Supp. 2d at 1317. It filed 116 drawback entries under T.D. 81-74 between December 11, 1991, and May 13, 1996, and Customs liquidated 69 of those entries with the full benefit of drawback. Id. In June 1996, the manufacturer received a Notice of Action informing it that "38 of its drawback entries were being liquidated without the benefit of drawback in full or in part, on the basis that 'scrap was shown on the export bill(s) of lading' and that 'drawback is not available upon exports of valuable waste.'" Id. at 1318.

[16] 19 C.F.R. § 177.10 (a) & (c), publication of decisions, provide that

> (a) Generally. Within 90 days after issuing any interpretive decision under the Tariff Act of 1930, as amended, relating to any Customs transaction (prospective, current, or completed), the Customs Service shall publish the decision in the Customs Bulletin or otherwise make it available for public inspection. For purposes of this paragraph an interpretive decision includes any ruling letter, internal advice memorandum, or protest review decision. Disclosure is governed by 31 CFR part 1, 19 CFR part 103, and 19 CFR 177.8(a)(3).

13

Id. (citing Precision I, 24 CIT at 1043).  The court said that 19 C.F.R. § 177.9 is the "apparent

source text from which the term 'treatment' was grafted onto § 177.10." Id. at 1326.  The court

explained that

> It appears that a 'treatment' may be found where a 'position' might not -- that the
> definition of 'treatment' does not require publication or liquidation among many
> ports over many years.  The term 'treatment' looks to the actions of Customs,
> rather than its 'position' or policy.  It is also distinct from the terms 'ruling' and
> 'decision,' which are governed by § 1625(c)(2).  This construction would
> recognize that importers may order their actions based not only on Customs'
> formal policy, 'position,' 'ruling' or 'decision,' but on its prior actions.  This
> construction furthers the stated legislative intent underlying § 1625(c).

Precision I, 24 CIT at 1043-44 (internal footnotes omitted).  It held that the government had

"failed to point to anything in the language or the legislative history of, or the regulatory scheme

surrounding, § 1625(c)(2) which persuades the court that its earlier holding -- that 'the term

"treatment" looks to the actions of Customs, rather than its "position" or policy . . .'" in Precision

I was erroneous. Precision II, 182 F. Supp. 2d at 1328.  Thus, the court stated in Precision II, that

"the only proof needed to establish a treatment is a description of the transactions; the only intent

referenced by the regulation is that of the **importer**, in arranging its affairs in reliance on the

treatment."[17] Id. at 1326 (emphasis in original).

---

> (c) Changes of practice.  Before the publication of a ruling which has the effect of
> changing an established and uniform practice and which results in the assessment
> of a higher rate of duty within the meaning of 19 U.S.C. 1315(d), notice that the
> practice (or prior ruling on which that practice was based) is under review will be
> published in the Federal Register and interested parties will be given an
> opportunity to make written submissions with respect to the correctness of the
> contemplated change.

[17] Furthermore, the court described how "[s]ection 7361(c) of the Anti-Drug Abuse
Amendments Act of 1988 (Title VI, Pub. L. 100-690) requires the Secretary of the Treasury to
promulgate **regulations to provide for nationwide uniformity of certain decisions made by**

14

The facts before the court indicate that like the parties in the Precision cases, CIP submitted to Customs its intention to claim drawback under 19 U.S.C. § 1313(b) for substitution manufacturing drawback involving steel articles. The merchandise at issue in the Precision cases was "liquidated with the benefit of drawback between June 5, 1992 and November 28, 1997 [and] is substantially identical to the merchandise at issue in the two claims at issue in this litigation for which drawback was denied." Plaintiff's Statement of Facts as to Which There is No Genuine Issue to be Tried at 3 ¶ 19; Defendant's Response to Plaintiff's Statement of Additional Material Facts Not in Dispute at 4 ¶ 19. Plaintiff here, in its letter dated February 16, 1994, stated that it would comply with the terms and conditions of T.D. 81-74 and made 26 drawback entries between December 2, 1995, and March 7, 2002. However, unlike the plaintiff in the Precision cases, Customs did not grant drawback to any of CIP's entries involving scrap, but rather denied them.

The court does not find persuasive Defendant's argument that a ruling letter denying drawback to an importer may be the basis for denial of another importer's drawback claim for similar goods, while at the same time Customs grant of drawback to another company may *not* be the basis for a similar grant. See Precision II, 182 F. Supp. 2d at 1329. Defendant is arguing that CIP should follow a standard that Customs itself did not follow. Id. Plaintiff here agreed to abide by the terms of T.D. 81-74 and claimed drawback on steel scrap similar to the claim by the plaintiffs in the Precision cases. Agreed Statement of Facts ¶ ¶ 2, 6. Customs however denied CIP's drawback claims. Id. Customs' disparate decisions in this case and the Precision cases, are

U.S. Customs Service officers and to establish procedures by which certain parties affected by the lack of such uniformity may have the alleged inconsistencies resolved." Id. at 1326 (emphasis in original).

15

indicative of the fact that eligibility for drawback on steel scrap[18] continues to be a gray area. See Precision II, 182 F. Supp. 2d at 1329. Given these circumstances, this court does not find that Customs' actions altering its "treatment" of CIP's claims for drawback is consistent and reasonable in light of the Precision cases.

**2**

**Section 1625(c)(2) Entitles CIP to the Same "Treatment" Afforded Other Importers of Substantially Similar Merchandise**

Plaintiff contends that, under the plain language of 19 U.S.C. § 1625(c)(2), it is entitled to the same "treatment" Customs afforded to the parties in the Precision cases. In its supplemental briefing materials,[19] Plaintiff stated that when 19 U.S.C. § 1625 was amended, "Congress specifically removed from Customs any discretion to alter the effective date of any change in a prior "treatment" until after the notice and comment period."[20] Plaintiff's Supplemental

---

[18] The Precision cases covered steel scrap described as "stainless steel," "metal scrap," "scrap steel for remelting purposes only," and "steel scrap sabot." Precision II, 182 F. Supp. 2d 1317.

[19] During the May 12, 2004, oral argument, the court ordered supplemental briefing and requested that the parties further address the legislative history of 19 U.S.C. § 1625(c)(2).

[20] Section 625 of the Tariff Act of 1930, codified at 19 U.S.C. § 1625, was amended by section 623 of Title VI, the Customs Modernization ("Mod Act") provision of the North American Free Trade Agreements Implementation Act ("NAFTA"). NAFTA, Pub. L. No. 103-182, 107 Stat. 2057, 2186. Prior to enactment of the Mod Act, 19 U.S.C. § 1625 was silent as to the effective date of a new treatment. Customs promulgated a series of regulations prior to the Mod Act that provided that the circumstances under which Customs would delay the effective date of a change to a treatment previously accorded by Customs. These regulations applied to the recipient of the ruling letter and unspecified "other parties," and provided that:

> The Customs Service will from time to time issue a ruling letter covering a transaction or issue not previously the subject of a ruling letter and which has the effect of modifying the treatment previously accorded by the Customs Service to

Memorandum in Support of its Motion for Summary Judgment and Response in Opposition to Defendant's Cross-Motion ("Plaintiff's Supplemental Brief") at 1.

Plaintiff further argues that, in its regulations, Customs reserved for itself discretion to determine when an importer could apply a prior "treatment." Id. at 2-3. However, Plaintiff points out that Congress did not grant any discretion to Customs in determining when an importer qualifies for a prior "treatment" when it drafted and enacted the new 19 U.S.C. § 1625(c). Id.; see also Am. Bayridge, 22 CIT at 1151. According to Plaintiff, Customs' regulations state that an importer has to "'demonstrate to the satisfaction of the Customs Service'" that the prior treatments were 'sufficiently consistent and continuous' and that the importer 'reasonably relied' on the treatment in arranging its future transactions" to be eligible for a similar "treatment." Plaintiff's Supplemental Brief at 2 (referring to 19 C.F.R. § 177.9(e)(2)).

Plaintiff claims that Congress could have adopted language from the old Customs regulations; it could have limited the application of the new treatment statute to treatments within the preceding two years, to prior recipients of a ruling letter or treatment, and only to those who reasonably relied, but chose not to. Plaintiff points out that when Congress enacts a law, it is presumed to know the existing law. Id. at 3 (citing Am. Bayridge, 22 CIT at 1150). CIP argues that Congress did not expressly grant Customs discretion to either limit or modify the effective

---

> substantially identical transactions of either the recipient of the ruling letter or other parties. Although such a ruling letter will generally be effective on the date it is issued, the Customs Service may, upon application by an affected party, delay the effective date of the ruling letter, and continue the treatment previously accorded the substantially identical transaction, for a period of up to 90 days from the date the ruling letter is issued.

19 C.F.R. § 177.9(e)(l) (1993).

date of a new interpretive ruling or decision or change the effective date for a new interpretation to a specific category of persons. Id. Furthermore, Plaintiff argues that this limitation cannot mean that Congress intended to deny the agency's discretion to both interpret and fill gaps in the new statute: it only means, as stated in Am. Bayridge, that Congress's "failure to carry over the discretionary language of the old regulations into the new statute provides further support for the conclusion that Congress did not intend the statute to be a discretionary grant to Customs." Id. at 3 (quoting Am. Bayridge, 22 CIT at 1149). Plaintiff claims that "Customs may not now exercise any discretion to alter the effective date of a new treatment by making it retroactive to a particular class of importer - such as importers who did not receive the prior treatment, or who did not rely upon it to Customs' satisfaction. Id. at 1.

Defendant states that "[t]here is no dispute that the purpose of 19 U.S.C. § 1625 is to provide predictability for importers in structuring their business while also retaining flexibility for Customs in the exercise of its administrative authority." Defendant's Cross-Motion at 12. However, it claims that the facts and reasoning of the Precision decisions are inapposite to the facts of this case. Defendant states that "CIP nevertheless contends that, under the plain language of § 1625(c)(2), it is entitled to the same treatment Customs accorded to other claimants who had previously received drawback for exported stainless steel scrap." Id. at 8. However, Defendant argues that "not only do the Precision cases not aid CIP, but CIP does not explain which portion of the statutory language in § 1625(c)(2) expressly requires that Customs must take the treatment given to one party and apply it to another party." Id.

Defendant argues that its actions were reasonable and consistent with established law. Defendant's Supplemental Memorandum in Support of Its Cross-Motion for Summary Judgment

18

and in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Supplemental Brief") at 1. Defendant claims that there is nothing in the legislative history that suggests that Congress intended 19 U.S.C. § 1625(c) to limit Customs' discretion and judgment on how best to administer the Customs laws, nor any indication which would establish the statutory right for a third party to rely on a "treatment" provided to another importer. Id. at 1-2. Defendant's main argument continues to be that although it did not have the proper regulations to interpret 19 U.S.C. § 1625 as amended by the Mod Act, it had implemented regulatory amendments to 19 U.S.C.§ 1625, specifically addressing whether a party may claim the "treatment" of another for itself. Thus, it claims that since the implementing regulations specifically state that Customs need not apply the benefit of a "treatment" provided to another importer, and because CIP was not accorded any prior "treatment" to its own importations, the Court must give deference to Customs' valid interpretations of the statute. Id. at 4 (citing Haggar Apparel Co., 526 U.S. at 392; Chevron, 467 U.S. at 837).

Defendant failed to follow the procedures specified by Congress in 19 U.S.C. § 1625 to alter a "treatment" previously granted. As the court explained in Precision I, the lack of specific legislative history regarding Congress's interpretation of 19 U.S.C. § 1625(c) does not eliminate the court's duty to employ the plain meaning of the language that the Congress adopted. 24 CIT at 1040; see United States v. Bornstein, 423 U.S. 303, 310, 96 S. Ct. 523, 46 L. Ed. 2d 514 (1976). The court is required to assume that the legislative purpose of a statute is expressed by the ordinary meaning of the words it uses. See Richard v. United States, 369 U.S. 1, 9, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962).

In Precision I, the court explained that 19 U.S.C. § 1625(c)(2) is violated when: "(1) an

19

interpretive ruling or decision (2) effectively modifies (3) a "treatment" previously accorded by Customs to (4) "substantially identical transactions", and (5) that interpretive ruling or decision has not been subjected to the notice-and-comment process outlined in § 1625(c)(2)." 24 CIT at 1040; see 19 C.F.R. § 177.9(a) (2001). Accordingly, in order to succeed in its claim of a "treatment" afforded by Customs, Plaintiff must show that Customs' denial of Plaintiff's protest was a ruling, and that it changed a "treatment" previously accorded by Customs to substantially identical transactions. Precision I, 24 CIT at 1040.

Customs current interpretation of a "treatment" pursuant to 19 U.S.C. § 1625(c) and 19 C.F.R. § 177 is not relevant to the court's analysis in this instance because Customs did not deny drawback based on its current statutory interpretation or regulation when it made its decision. Defendant may not now claim an interpretation on a basis different from the one it used when it made its denial: "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that [agency's] action was based." SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943). Furthermore, there is no indication in the legislative history of 19 U.S.C. § 1625 that Congress intended to afford to Customs the power to regulate retroactively. See Am. Bayridge, 22 CIT at 1150-51. The Federal Circuit has explained that:

> Section 1625(c) mandates that Customs provide notice and comment under specific circumstances. First, § 1625(c) only applies to a "proposed interpretive ruling or decision" by Customs. Second, the proposed interpretive ruling or decision must either modify or revoke a prior ruling or decision or have the effect of modifying Customs' previous treatment of "substantially identical transactions." Section 1625(c) requires that, before Customs issues such an interpretative ruling or decision, it publish it and allow interested parties an opportunity to comment on its correctness. The statute instructs Customs to consider the comments it receives. Section 1625(c) then provides that the final ruling or decision will become effective 60 days after its publication.

20

Sea-Land Serv. v. United States, 239 F.3d 1366, 1372 (Fed. Cir. 2001).

As stated in Precision II, this court's understanding of 19 U.S.C. § 1625(c)(2) is consistent with, and furthers, the legislative history underlying the Mod Act, which substantially amended 19 U.S.C. § 1625:

> The guiding principle in our discussions with the trade community is that of "shared responsibility." Customs must do a better job of informing the trade community of how Customs does business; and the trade community must do a better job to assure compliance with U.S. trade rules
> . . .
> As a general statement, Customs supports the JIG concept of "informed compliance." Importers have the right to be informed about Customs rules and regulations, and its interpretive rulings and directives, and to expect certainty that the ground rules would not be unilaterally changed by Customs without the proper notice and opportunity to respond.

Precision II, 182 F. Supp. 2d at 1328 (citing Customs Modernization and Informed Compliance Act: Hearing on H.R. 3935 Before the House Comm. on Ways and Means, Subcomm. On Trade, 102nd Cong. 91 (1992) (statement of Commissioner Carol Hallett, United States Customs Service)); see also S. Rep. No. 103-189 at 64 (1993). Similar to the circumstances in the Precision cases, the government once again has failed to point to any contravening legislative history or other authority to justify its disparate treatment of substantially similar goods.

Application of the rule set forth in 19 U.S.C. § 1625(c)(2) requires the government to comply with a statutorily mandated notice-and-comment process before implementing a ruling or decision that changes an earlier "treatment." Precision II, 182 F. Supp. 2d at 1329. So long as Customs chooses not to follow this process, it is bound by its earlier "treatment." Id. CIP followed the "treatment" afforded by Customs to other importers of similar goods. As a result, if

21

Customs wishes to alter the "treatment" afforded to importers of similar goods, it may do so at any time by following the notice and comment procedures set forth in 19 U.S.C. § 1625, and thus impose a new ruling or decision, consistent with the statute, denying drawback on steel scrap or trim. See id. at 1329. This process, "as Congress and Customs alike evidently intended, provides importers with some predictability in structuring their business, while retaining for Customs flexibility in the exercise of its administrative authority." Id.

The court finds that given the unique facts and circumstances of this case, Customs is bound by and subject to its earlier treatment of steel scrap as eligible for drawback. This ruling is limited to the facts of this case and should not be deemed precedential for claims of drawback on steel scrap filed subsequent to the publication of this opinion.

## VII

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted and the Defendant's Cross-Motion for Summary Judgment is denied.

/s/ Evan J. Wallach

Evan. J. Wallach, Judge

Dated: September 22, 2004
        New York, New York

22